[No. 26749. Department One. December 30, 1937.]

PAUL M. RESOR et al., Respondents, v. LOUIS SCHAEFER, as Administrator, Appellant.[1]

[1]Reported in 74 P. (2d) 917.

92

` *Hall & Schaefer,* for appellant.

*Albert M. Nanney* and *Jas. O. Blair,* for respondents.

STEINERT, C. J.—This is an action to compel specific performance of an oral contract of a decedent. The administrator of the decedent's estate answered by general denial and also cross-complained for affirmative recovery of rent due the estate. Trial by the court without a jury resulted in findings and conclusions, on the basis of which the court decreed specific performance and, in effect, denied recovery on the cross-complaint. The administrator has appealed.

William P. Draper and Hannah M. Draper, an elderly couple, lived in Vancouver, Washington, in a home owned by them and valued at about two thousand dollars, with household furnishings therein of the value of about five hundred dollars. Respondents, a much younger couple, with one child, lived in a rented house about four blocks distant from the Drapers. The acquaintance between the two families began about May, 1934. In December of that year, Mrs. Draper died, intestate and without issue.

Thereafter, Mr. Draper continued to live in the old home until his death in February, 1936. He had, for some time prior to that, been afflicted with cataracts which rendered him almost totally blind, and also with diabetes and Bright's disease which ultimately resulted in his death.

In January, 1935, Mr. Draper went to a hospital in Portland for an operation upon one of his eyes and remained there for several months. The respondents allege in their complaint that, at the hospital, on March 10, 1935, Mr. Draper and they entered into the oral contract upon which this action is based.

According to the terms of the contract as pleaded, respondents agreed to move into Mr. Draper's house, put the same in livable condition and thereafter maintain it as a home for Mr. Draper during the remainder of his life, also to prepare his meals, nurse and care for him as long as he should live; in consideration of these things, Mr. Draper agreed to devise and leave to respondents all his property, real and personal, after payment by them of his medical bills and the expenses of his burial.

Shortly after March 10, 1935, respondents moved into Mr. Draper's house and prepared it for his return from the hospital. No contention is made by appellant that respondents did not fully and satisfactorily perform all the services required of them under whatever agreement they may have had with Mr. Draper. The question before us is not one of adequate performance of services, but simply whether the contract as alleged was actually made between the parties.

It further appears that, during all of the times above mentioned, Mr. Draper had a bank account which, by reason of the deposit therein of a monthly income that he had, increased from $901 on September 3, 1935, to $1,364.73 on February 18, 1936. Sometime after March 10, 1935, the exact date not being definitely fixed, Mr. Draper, accompanied by Mr. Resor, went to the bank and there made arrangements whereby checks signed by Mr. Draper and presented by Mr. Resor would be honored and paid by the bank. On February 18, 1936, two days before his death, Mr. Draper signed a check

payable to Mr. Resor in the exact amount of his balance then in the bank. The check was cashed on the same day and deposited to the credit of Mr. Resor. After Mr. Draper's death, Mr. Resor paid from the funds held by him all debts owing by Mr. Draper, together with the expenses of his last sickness and burial, leaving in Resor's possession a balance of $1,137, which respondents now claim by virtue of the oral contract.

Mr. Draper died February 20, 1936, intestate and without issue. At the time of his death, he had made no conveyance or transfer to the Resors of any of his property except by the check above mentioned. His nearest relatives are a brother and a sister living in distant states, and whom he had not seen for many years.

Appellant assigns as error (1) the entry of the decree reciting that an oral agreement to devise and bequeath property had been made by the deceased, (2) the admission of certain testimony concerning privileged communications, and (3) the denial of relief under the cross-complaint for rent alleged to be owing by respondents and accruing subsequent to Mr. Draper's death.

It has become settled law in this state that oral contracts to devise or bequeath property are enforceable. *Velikanje v. Dickman,* 98 Wash. 584, 168 Pac. 465; *Alexander v. Lewes,* 104 Wash. 32, 175 Pac. 572; *Olsen v. Hoag,* 128 Wash. 8, 221 Pac. 984; *Perkins v. Allen,* 133 Wash. 455, 234 Pac. 25; *Avenetti v. Brown,* 158 Wash. 517, 291 Pac. 469.

Although such contracts are not favored in law, and are viewed with suspicion by the courts, they are not summarily rejected simply because they have not been reduced to writing or are not supported by some kind of written evidence. The right and power to make a valid agreement to dispose of property by will in a par-

ticular way and the correlative obligation arising under such an agreement have long been recognized. If the terms of the contract, the intention of the parties, and the adequacy of consideration are established to the satisfaction of the court, by the degree of proof required, and no fraud, overreaching or other inequitable circumstance of controlling effect is shown, the court will uphold the contract. In the very nature of things, therefore, each case must rest upon its own particular facts and circumstances.

However, the courts also recognize that such contracts are easily fabricated and hard to disprove. As noted in our own decisions, alleged oral contracts to devise property have become so frequent in recent years as to occasion alarm and cause courts to become very conservative, and even strict, with reference to the nature of evidence required to establish such contracts, which operate to the detriment and disinheriting of lawful heirs who would otherwise be entitled to the estate. *Wall v. McEnnery's Estate,* 105 Wash. 445, 178 Pac. 631.

This court has, therefore, very definitely and firmly adopted the rule that an oral promise to make a will or an oral contract to devise or bequeath property must be established by evidence that is conclusive, definite, certain, and beyond all legitimate controversy. *Alexander v. Lewes,* 104 Wash. 32, 175 Pac. 572; *Frederick v. Michaelson,* 138 Wash. 55, 244 Pac. 119; *Henry v. Henry,* 138 Wash. 284, 244 Pac. 686; *Lohse v. Spokane & Eastern Trust Co.,* 170 Wash. 46, 15 P. (2d) 271; *Clark v. Crist,* 178 Wash. 187, 34 P. (2d) 360. See, also, *Lager v. Berggren,* 187 Wash. 462, 60 P. (2d) 99.

With these rules to guide us, we proceed to a consideration of the evidence bearing upon the making of the contract.

Respondents could not, of course, testify on that sub-

ject because of the inhibition of Rem. Rev. Stat., § 1211 [P. C. § 7722]. They did, however, produce two witnesses who testified specifically and definitely thereon.

One of the witnesses testified as follows: On March 10, 1935, Mr. Resor telephoned to him from the hospital at Portland, where Mr. Draper was then confined, and requested the witness to bring Mrs. Resor over from Vancouver to the hospital; on his arrival there with Mrs. Resor, they were at once taken to Mr. Draper's room; there Mr. Resor, in the presence of Mr. Draper, first explained to Mrs. Resor that Mr. Draper wanted them to take care of him during his lifetime and in return therefor would leave his property to them. Mrs. Resor's consent was required because it was understood that she would have to do most of the work. Mrs. Resor having expressed her willingness to undertake the obligation on the basis outlined, the parties then discussed the arrangements in detail, which the witness narrated in his testimony and which in all respects conform to the terms of the contract as already set forth above. The parties thereupon entered into the contract with full knowledge and understanding of its terms.

The other witness was a physician who had attended Mr. Draper during a period of about five years. He testified that on two occasions Mr. Draper had told him of his arrangements with the Resors. He testified specifically that on one of these occasions Mr. Draper had told him that the Resors were to take care of him, pay all his debts, and were to receive the residue of his property. The doctor admitted, however, that these statements were elicited from Mr. Draper in the course of the doctor's prescribing for him and in response to his suggestion that Mr. Draper go to a hospital where he could receive proper care.

Appellant objected to, and subsequently moved to

strike, the doctor's testimony on the ground that it was a privileged communication within the ban of Rem. Rev. Stat., § 1214 [P. C. § 7725] (4). The objection was overruled, and the motion was denied.

The statute provides:

"A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient; . . ."

The witness was a regular physician. Mr. Draper was his patient. In attending the patient, the physician was prescribing and acting for him. The statement made by Mr. Draper to the physician was not an incidental one nor was it extraneous to the duty required of the physician. Mr. Draper was giving his reasons why it was unnecessary for him to go to the hospital. The care that he would receive from the Resors was a substitute for the care that he would receive in a hospital, and the conditions under which the Resors were to render him care and treatment would undoubtedly be a factor in the determination by the doctor whether their services would be both lasting and sufficient. We think that the evidence was inadmissible and should have been excluded.

That leaves the evidence of only the first witness for respondents on the vital phase of the case. We recognize fully the gravity of the situation thus presented in the light of the rule already announced. Hence we have subjected the evidence of the particular witness to the closest scrutiny and have considered it according to the strict requirements of the rule.

The contract made by Mr. Draper was not, under the existing circumstances, an unnatural one. He was old and infirm, with not many years, at most, to live. He had no children, nor did he have any rela-

tives close by. He preferred his own home to a life among strangers or in a hospital. But, being almost blind and afflicted with diabetes and Bright's disease, manifestly he was unable to keep up his home or live there unattended. Respondents were his friends and were willing to give him the care and attention that he needed and desired. That they did fully minister to his wants and comforts in full compliance with the alleged agreement, is beyond any question.

The terms of the contract, as testified to by the single witness, are in no sense vague, indefinite, or uncertain. They express in détail just what respondents were to do and what Mr. Draper was to do in return. If it were conceded that the contract was in fact made, there could be no doubt that it would be enforceable. The only question is whether the one witness told the truth when he testified as he did. On that score, the record before us carries its conviction. The trial judge, in his memorandum opinion, first stated the rule, above quoted, by which he was controlled, and then expressed himself to the effect that he believed that the witness was telling the truth. The trial court was, therefore, fully convinced that the evidence met the requirements of the rule, and we find no good reason for differing from that conclusion. Indeed, the honesty and veracity of the witness are emphasized by the fact, as disclosed by the record, that he might have bolstered his testimony in certain respects without fear of contradiction; yet he declined to do so when the opportunity was presented in both his direct and cross examination.

An added circumstance which we think is entitled to some weight, when properly considered, is the fact that Mr. Draper gave Mr. Resor his check for the amount of his balance in bank. Unless we are to say that respondents were guilty of a most heinous offense

in deliberately perpetrating a monumental fraud upon Mr. Draper or that Mr. Draper suddenly found it necessary to withdraw his entire bank account at once, we can only conclude that the check was given in partial compliance with the prior agreement. We find nothing in the record which would justify us in finding that there was either fraud or sudden emergency.

We hold that the contract was established by the evidence with that degree of proof required by the rule. This disposition of the matter eliminates appellant's third assignment of error.

The judgment is affirmed.

HOLCOMB, MAIN, MILLARD, and GERAGHTY, JJ., concur.

