[No. 30847. Department One. August 12, 1949.]

DEWITT CHARLES SOUTHWICK et al., *Respondents*, v. ROY F. SOUTHWICK, *as Executor, Appellant.*[1]

[1]Reported in 208 P. (2d) 1187.

*Gordon McGauvran* (*Everett O. Butts,* of counsel), for appellant.

*Lee L. Newman,* for respondents.

BEALS, J.—By their amended complaint in this action, the plaintiffs, who are husband and wife, asked for a decree directing specific performance of an oral contract, which, they alleged, was entered into between them and Frank F. Sugnet and Etta Irene Sugnet, his wife, and by the terms of which the plaintiffs agreed to leave their home in Duluth, Minnesota, and come to the state of Washington to assist and care for Mr. and Mrs. Sugnet as long as they should live, in consideration of an agreement by the Sugnets to leave all of their property to the plaintiffs.

Plaintiffs alleged that they, in all respects, carried out their contract, but that Frank F. Sugnet, who survived his wife, by his last will and testament, bequeathed and devised all of his property to Roy F. Southwick, thereby breaching the contract with plaintiffs, referred to above.

In their amended complaint, as an alternative cause of action, in case their prayer for specific performance should be denied, plaintiffs alleged that they had filed a claim for over eleven thousand dollars against the estate of Frank F. Sugnet, deceased, on account of services rendered, and asked for judgment against the estate in accordance with their claim. Roy F. Southwick, as executor of the estate of Frank F. Sugnet, deceased, was named as defendant in the action.

The defendant answered plaintiff's amended complaint, stating that he was the executor of the will of the late Frank F. Sugnet, and the sole devisee under that will, denying the allegations of the amended complaint, and praying for dismissal of the action.

After the institution of this action, defendant, Roy F. Southwick, as executor of Mr. Sugnet's estate, brought suit against plaintiffs herein for the recovery of $2,231.12, alleging in his complaint that the plaintiffs in this action had

in their possession the amount mentioned, which was, in fact, the property of the estate of Frank F. Sugnet.

The two actions were consolidated, by order of the superior court, and were tried together as an equitable proceeding.

After the trial, the court decided both actions in favor of the above-named plaintiffs, an identical decree having been filed in each proceeding. The trial court decreed specific performance of the oral contract between plaintiffs and Mr. Sugnet, and dismissed defendant's action.

Roy F. Southwick, as executor, has appealed to this court from the adverse decree in each case. Appellant makes the following assignments of error:

"(1) The court erred in failing to sustain defendant's demurrer;

"(2) The court erred in failing to grant defendant's motion to dismiss upon the plaintiff's opening statement;

"(3) The court erred in denying defendant's motion to dismiss, and challenge to the sufficiency of plaintiff's evidence;

"(4) The court erred in denying defendant's motion for judgment notwithstanding the oral decision;

"(5) As to Cause No. 384639 [No. 30846 before this court], the court erred in failing to find that the deposit of $800.00 was made after the death of Frank Sugnet, and retained its status as separate property belonging to the estate, and in failing to grant the executor judgment for such amount of money."

This opinion considers the appeal in the above-entitled cause, wherein respondents were awarded specific performance of the contract between them and the Sugnets.

Respondent DeWitt Southwick and appellant, Roy Southwick, are brothers, nephews of the deceased, Frank F. Sugnet. Mr. and Mrs. Sugnet were for many years residents of King county, residing near Bellevue. Mrs. Sugnet died June 22, 1944, and Mr. Sugnet died July 25, 1946. Mr. Sugnet had conducted a shop, where he repaired furniture, filed saws, and worked, generally, as a "handy man." Since 1932, respondent DeWitt Southwick had been operating a woodworking and novelty shop at Duluth.

In 1943, appellant Roy Southwick visited his uncle and aunt at Bellevue and found them aged and in poor health, and, generally, in a difficult situation. Appellant, who resided in New Jersey, then visited respondents in Duluth and suggested that they remove to Bellevue and take care of their uncle and aunt, telling them, according to respondent's testimony, that Mr. Sugnet had told appellant that, if he would stay and assist Mr. and Mrs. Sugnet, they would leave him all of their property, appellant stating that he had declined this offer.

Appellant purchased a ticket from Duluth to Bellevue, which he gave to DeWitt, and the latter went to Bellevue, where he was later rejoined by his wife. Both respondents then assisted Mr. and Mrs. Sugnet, the former in his work and the latter in her housekeeping, and remained in Bellevue until both Mrs. and Mr. Sugnet had died.

It appears that Mrs. Sugnet made no will, and that Frank F. Sugnet made his will, July 5, 1944, in favor of appellant Roy F. Southwick, thereby, as respondents allege, breaching the contract which the trial court found Mr. Sugnet had entered into with respondents.

When appellant visited his uncle and aunt in 1943, they were residing on a tract of land, a few acres in extent, about one-half mile from Bellevue. His uncle, Mr. Sugnet, was conducting the shop above referred to, he and his wife living in a small four-room cottage nearby. Mrs. Sugnet was suffering from some form of palsy, which rendered it very difficult for her to accomplish her housekeeping.

Respondents had seven adult children, who had settled in Duluth, and a daughter then thirteen years of age. They were rather hesitant about leaving that city and their family, but finally did so, as above stated, accompanied by their youngest child.

After moving to Bellevue, respondents purchased a small lot upon which were standing two rough buildings, which respondents made habitable and where they resided.

By September, 1943, preliminary arrangements had been made. Respondent Nanette Southwick performed the work

in and around the Sugnet home, as stated by disinterested witnesses, taking most excellent care of Mrs. Sugnet until her death, June 22, 1944, and, thereafter, caring for Mr. Sugnet until his death.

During the first thirteen months of their stay at Bellevue, respondent DeWitt Southwick was employed by Pan-American Airways, and worked evenings and off hours in assisting the Sugnets. He enlarged Mr. Sugnet's work shop so that he (DeWitt) could engage in his prior occupation of making wood novelties. During some portion of this time, appellant was also visiting nearby and assisted financially and otherwise in the maintenance of the two establishments.

In October, 1944, DeWitt terminated his employment with Pan-American and devoted his full time to the novelty shop and to assisting his uncle, refusing other employment which was offered to him, including an opportunity to go to California to engage in construction work.

Several neighbors, called by respondents, testified at some length concerning the relations between respondents and their uncle and aunt.

Bernard Nixon, the postmaster at Bellevue, testified concerning Mr. Sugnet's postal savings account, stating that Mr. Sugnet had said: " ' . . . the people that will get this are the ones that are taking care of me,' " referring to respondents.

Mr. Dougherty, who had delivered fuel to the Sugnets, testified that, in a conversation with Mr. Sugnet, the latter told the witness:

" . . . that he was well satisfied. They had taken care of him very well and that, well, same as I said before. He said that he had made an agreement with them when he passed on they was to get everything he had for taking care of him as long as he lived. Q. And will you tell Judge Douglas whether or not you discussed this thing with him or he discussed this conversation with you more than once? A. He talked about it several times. We sat there talking."

The following occurred during the examination of Mr. Ottinger, who delivered milk to the Sugnets:

"Q. Tell Judge Douglas in your own way what he said to them—to you about them. A. Oh, this one occasion when the Sugnets—or when the Southwicks were coming, I did not know them at the time. He seemed very happy this particular day and that is the mood I had never seen him in before, and he said that he just made a bargain whereby their niece and nephew were coming to Bellevue to take care of him and he thought it was an excellent deal because his eyesight was becoming bad, and because Mr. Southwick was a carpenter; he thought it would be good for business. Q. State whether or not he made the same statement to you throughout the time after they came? A. After the Southwicks was here, I remember very distinctly he telling me that he thought he was extremely fortunate in having Mr. and Mrs. Southwick here. They were doing a good job with the business, taking care of him, and that he intended to will what he had to them."

Milton D. King, a railroad switchman, who had purchased some land from Mr. Sugnet, which the witness improved, testified as follows:

"Q. Did you have any conversations with Mr. Sugnet about relations between him and the Southwicks? A. Well, yes, when I was— Q. Tell the Judge what if anything you said and he said. MR. BUTTS: Same objection. A. I was worried about the title to my property. Q. What? A. Worried about the title to my property. I had just bought— I heard he was going to take a little trip back East, didn't figure he would ever make it, didn't think he would go, let alone get back. I said, 'How about my title, my deed before you go back?' He says, 'You have nothing to worry about,' he says, 'Nan and DeWitt will be here, take care of things when I am gone. In fact, I got an agreement with him to take care of me for the rest of my days providing I don't have to worry about a thing until I get back. If I don't get back they will be here to carry on.' "

Mr. King's wife, Ethel, testified to the same effect concerning the conversation between her husband and Mr. Sugnet.

The following occurred during the examination of Mr. Andrew Sharp, a neighbor:

"Q. Tell Judge Douglas what, if any, conversations you had and what Mr. Sugnet said to you about his relationship

with the Southwicks? A. Well, at one time he was just getting over an ailment or sick spell, and I told him, I said to him he was fortunate in having the Southwicks. . . . A. (continuing) I said to him he was fortunate in having the Southwicks with him and his answer to me was, 'My God, yes. I am certainly going to see to it that they get, get this.' "

As opposed to the foregoing and similar testimony, appellant relies upon the fact that Mr. Sugnet, July 5, 1944, made his will, leaving all of his property to appellant. Appellant also introduced in evidence a letter written to him by Mr. Sugnet, June 21, 1946, in which he criticized respondents for certain alleged neglects, and so forth.

Gordon McGauvran testified concerning a conversation with Mr. Sugnet, a week before he died, in which the latter told him that he had left everything to appellant.

The following is of some interest in connection with the weight to be accorded the testimony of Andrew Sharp, who was called as a witness by respondents. On cross-examination, Mr. McGauvran testified that Mr. Sharp had been his client for a long time, and that, after this litigation was under way, Mr. Sharp called upon him, stating that Mr. Sugnet's will would be contested, and that, when Mr. Sharp had been talking to Mr. Sugnet in the latter's shop, Mr. Sugnet told him "that the shop or this place would belong to DeWitt" when Mr. Sugnet died. Mr. McGauvran then continued:

"I said, 'Is that what he told you?' He said, 'That is the truth.' He says, 'I don't want to be against you. But that is the truth and I will tell the truth.' "

Respondent Nanette Southwick testified that, when appellant visited his brother and the witness at Duluth, appellant stated that he had visited his uncle and aunt in Bellevue; that Mrs. Sugnet was suffering from paralysis; that appellant could not arrange his affairs so that he could move to Bellevue, and that he wished respondents to give up their home in Duluth and move to Bellevue to take care of the uncle and aunt.

Appellant's counsel, in open court, offered to stipulate that respondents moved to Bellevue because of what appellant had said. The stipulation was not acceptable to respondents' counsel.

Respondent Nanette Southwick further testified that appellant "took Uncle down to have this will made out, and Roy stated to me several different times, 'Well, Nan, everything is fixed up; everything has been left to you and DeWitt.' "

On rebuttal, Mrs. Southwick again testified that appellant urged them to move to Bellevue, stating the proposition that Mr. Sugnet had made to him, and telling respondents, " 'Uncle wants you to take care of him. You can do the same kind of work that he does.' "

Respondent DeWitt Southwick, testifying by deposition, stated that, when appellant visited respondents in Duluth, he spoke to the witness about respondents' moving to Bellevue and taking care of the Sugnets, stating that Mr. Sugnet had offered appellant "a proposition to stay with him and look after Aunt and Uncle," and that, as the result of appellant's suggestions, respondents did move to Bellevue.

Appellant testified as a witness on his own behalf, but did not deny that he had made the statements to respondents concerning which they had testified, as above set forth.

It appears that Mr. Sugnet had opened a joint survivorship account with respondent Nanette Southwick in a Bellevue bank. There is a dispute between the parties to this action concerning a deposit of eight hundred dollars added to this account, appellant contending that the deposit was made subsequent to Mr. Sugnet's death.

In view of our opinion in the case at bar, this matter, presented by appellant's fifth assignment of error, becomes immaterial.

By assignments of error Nos. 3 and 4, *supra*, appellant presents the question to be here decided. Appellant argues that this is an action at law, rather than a proceeding in

equity, because respondents, as above stated, filed in the probate proceeding a claim against the estate.

■ This court has held that, in an action to enforce specific performance of an oral contract to make a will in favor of the plaintiff, which contract had been fully performed by the plaintiff, the filing of a claim against the estate is not necessary. *McCullough v. McCullough,* 153 Wash. 625, 280 Pac. 70. See, also, *In re Krause's Estate,* 173 Wash. 1, 21 P. (2d) 268; *In re Krueger's Estate,* 11 Wn. (2d) 329, 119 P. (2d) 312; *Tucker v. Brown,* 20 Wn. (2d) 740, 150 P. (2d) 604.

■ Respondents had the right to plead, as an alternative demand, a claim against the Sugnet estate for services rendered. Filing a claim and pleading an alternative cause of action thereunder nowise militate against respondents' demand for specific performance of the contract. It does not appear that appellant ever demanded a jury trial, and the action was tried to the court and considered as an equitable action.

Appellant vigorously contends that the evidence is insufficient to prove the existence of the contract which the court ordered specifically performed, citing the case of *Jennings v. D'Hooghe,* 25 Wn. (2d) 702, 172 P. (2d) 189, in which a similar cause of action was considered and decided by this court in favor of the defendant. In the opinion in the case cited, this court reviewed many of our previous decisions. Appellant relies upon the following quotations from the opinion of the majority:

"Cases of this kind are not favored and, when the promise rests in parol, are even regarded with suspicion, and will not be enforced except upon the strongest evidence that it was founded upon a valuable consideration and deliberately entered into by the deceased.

"The burden of proof was upon the proponent of the contract to prove it by evidence that was conclusive, definite, certain, and beyond all legitimate controversy. *Resor v. Schaefer,* 193 Wash. 91, 74 P. (2d) 917."

The court held that the plaintiff had failed to establish the alleged contract upon which he based his claim.

Appellant relies upon the case last cited, contending that the facts disclosed by the record herein bring this case within the rule therein announced. Appellant also cites other decisions of this court and authorities from other states, which, he argues, support his contention that the decree appealed from was erroneous and should be reversed.

Appellant argues, *inter alia*, that testimony introduced by respondents (which was evidently in support of their alternative cause of action) concerning the value of respondents' services to the Sugnets, brings this case within the rule that, when a claim against the estate of a deceased person may be compensated in money, specific performance of a contract to make a will should be denied.

In view of the record before us in the case at bar, appellant's argument last above mentioned is without merit.

The trial court was very liberal in allowing the introduction of evidence by both parties, the statement of facts containing more than five hundred pages of testimony.

At the close of the case, the trial court rendered its oral decision, referring to the case of *Luther v. National Bank of Commerce*, 2 Wn. (2d) 470, 98 P. (2d) 667, and quoting from the opinion in that case as follows:

"It is well settled in this state that oral contracts to devise and bequeath real and personal property are enforceable if they are established by evidence that is conclusive, definite, and beyond all legitimate controversy, and if there has been sufficient performance to remove the bar of the statute of frauds."

The court then reviewed the evidence in detail, discussing the testimony of the various witnesses, referring to the fact that they were all disinterested (save the parties to the action), and, in the opinion of the court, worthy of "a high degree of credit." The court further stated that none of respondent's witnesses were anywise discredited.

The testimony of these witnesses, whom the trial court deemed worthy of belief, very definitely tended to prove that Mr. Sugnet had stated that he had made an agreement or a bargain with respondents to the effect that, in con-

sideration of the care and attention which they were devoting to Mr. Sugnet (and had devoted to Mrs. Sugnet during her lifetime), respondents would receive Mr. Sugnet's property at his death.

In its oral decision, the trial court referred to this testimony and evidently took the same into consideration in signing the decree in the cause, the decree stating:

". . . and it appearing to the court that heretofore, towit: during September of 1943, Frank F. Sugnet and Etta Irene Sugnet, his wife, made and entered into an oral agreement with plaintiffs, DeWitt Charles Southwick and Nanette A. Southwick, his wife, in which said agreement it was agreed by and between the said Frank F. Sugnet and Etta Irene Sugnet, his wife, and the said DeWitt Charles Southwick and Nanette A. Southwick, his wife, that for and in consideration of the said DeWitt Charles Southwick and Nanette A. Southwick, his wife, caring for and giving to the said Frank F. Sugnet and Etta Irene Sugnet, his wife, every attention and taking care of the business of the said Frank F. Sugnet and Etta Irene Sugnet, his wife, for the rest of the natural lives of the said Frank F. Sugnet and Etta Irene Sugnet, that the said Frank F. Sugnet and Etta Irene Sugnet, his wife, would give, bequeath and devise unto the said DeWitt Charles Southwick and Nanette A. Southwick, his wife, all of their estate whether real, personal and/or mixed, . . ."

■ We agree with the trial court that respondents met the burden of proof which rested upon them to prove the contract with Mr. Sugnet "by evidence that is conclusive, definite, certain, and beyond all legitimate controversy." *Resor v. Schaefer*, 193 Wash. 91, 74 P. (2d) 917.

In the case of *Jennings v. D'Hooghe, supra,* this court court said, referring to cases similar to the case at bar:

"This court has held that the above statutes [Rem. Rev. Stat., §§ 1395, 10550, 10551] do not apply in instances in which oral contracts are made to convey property by will and the consideration has been fully paid. However, in such cases, in order to take the contract out of the statutes, the proof must show: (1) that deceased agreed to will or leave to the claimant certain property; (2) that the services contemplated as consideration for the agreement were

actually performed; and (3) that the services were performed in reliance upon the contract."

The evidence in the case at bar fully meets these three prerequisites.

Careful examination of the record convinces us that the trial court correctly determined the questions of fact and law presented for decision by the evidence, and the decree appealed from is affirmed.

JEFFERS, STEINERT, MALLERY, and SCHWELLENBACH, JJ., concur.

