Argued November 9, 1960, reversed and remanded January 11, 1961

# SUPOVE ET AL v. DENSMOOR ET UX

358 P. 2d 510

*Philip A. Levin,* Portland, argued the cause and filed briefs for appellants.

*Orval N. Thompson,* Albany, argued the cause for respondents. On the brief were Weatherford & Thompson, Albany.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Howell, Justices.

HOWELL, J. (Pro Tempore)

Plaintiff Supove brought this action to recover the reasonable value of his services for drafting plans for the defendants for the construction of a garage building. The defendants interposed an equitable defense. From a decree entered in favor of defendants, plaintiffs appeal.

Plaintiff Supove is an engineer and plaintiff Sunderland, a building contractor. The defendants Densmoor, husband and wife, are partners in the operation of a Chevrolet agency. As they were represented by Mr. Densmoor, he will be referred to as the defendant.

The defendant, who was interested in the construction of a new garage building, was contacted by a representative of Sunderland. Later Supove was recommended as a person qualified to draw the plans for the building. A conference was held in Supove's office between Supove, Sunderland and defendant and the cost of the building discussed. Defendant did not desire to spend in excess of $60,000. The parties also discussed Supove's fee and who was to pay it. Later, Sunderland and defendant signed the following instru-

ment which was introduced in evidence as defendant's exhibit B:

"MODERN STEEL BUILDERS
Distributors

BUTLER STEEL AND ALUMINUM BUILDINGS

11,500 S. W. Canyon Road—Beaverton, Oregon

"I agree to pay engineering and drafting costs to a maximum of $1,500.00 in the preparation of blue prints for the construction of a Chevrolet Agency at Albany, Oregon.

"In the event that the Modern Steel Builders can build the building with satisfactory facilities and with drawings approved by me for $60,000.00, I will enter into a contract with them for the construction of such a building. It being understood that in such an event, they will absorb the engineering and drafting costs into the final contract price for the building.

"Accepted — Don Densmoor Chevrolet Co.

Roy F. Sunderland
Date: 3/2/56

By D. W. Densmoor
Partner."

A copy of the above agreement was mailed to Supove by defendant.

After the plans were prepared by Supove and delivered to defendant, it was determined that the building could not be constructed for $60,000. The defendant refused to pay Supove for his efforts in the preparation of the plans and this action ensued.

The plaintiff stated the following in his complaint after alleging the status of the parties:

"IV.

"That it was then and there agreed between the parties that plaintiff would draw the plans and

blue prints for such Chevrolet agency, that defendants would pay the engineering and drafting costs not to exceed $1,500.00 for the preparation of such blue prints, and that in the event that defendants entered into a contract with Modern Steel Builders for the construction of such a building, Modern Steel Builders would absorb the engineering and drafting costs into the final contract price for the building.

"V.

"That defendants and said Ray [sic] F. Sunderland signed a written agreement expressing the understanding heretofore alleged, and that defendants furnished a copy of said agreement to plaintiff, a copy of which is hereto attached as Exhibit A hereof and by this reference made a part hereof as if fully set forth herein.

"VI.

"That plaintiff performed engineering and drafting services in reliance upon and in pursuance of the above-mentioned contract, and that such services were of the reasonable value of $1,474.27.

"VII.

"That defendants and said Modern Steel Builders did not enter into any contract for the construction of a Chevrolet agency.

"VIII.

"That on or about June 2, 1956, plaintiff made demand upon defendants for the reasonable value of his services, to-wit: $1,474.27, but that defendant has failed and neglected to pay said sum or any part thereof."

On motion of the defendant the court required the plaintiff to interplead Sunderland. The plaintiff complied and joined Sunderland as a party plaintiff in his second amended complaint. In defendant's further

and separate answer and defense, as a ground for reformation, he alleged mutual mistake of Sunderland and defendant or, in the alternative, fraud on the part of Sunderland and mistake by defendant, and alleged that the true agreement was:

> "* * * that their liability to pay the costs of the engineering and drafting expenses incurred by said plaintiff Roy F. Sunderland was conditioned upon their failure and refusal to enter into a contract with the said plaintiff Roy F. Sunderland to build said building at a cost not to exceed the sum of $60,000, and that in the event said building could not be built for $60,000, then they were not liable to the said plaintiff Roy F. Sunderland for any costs incurred by him for engineering and drafting expenses for the design of said building."

The trial court heard the testimony concerning the equitable defense of reformation and entered a decree reforming the contract. This action of the court granting reformation is the basis for plaintiffs' first assignment of error.

Assuming that the above facts properly present the issue of reformation, we turn now to the question presented in the briefs as to whether the evidence was sufficient to justify the trial court's action in granting reformation.

The instrument signed by Sunderland and defendant provides in the first paragraph that the defendant agrees to pay up to a maximum of $1,500 for the engineering and drafting costs. The second paragraph provides for only one condition or exception to the promise to pay in paragraph 1; namely, in the event Sunderland can build the building for $60,000, he, Sunderland, would absorb the engineering and drafting costs. This condition contained in the second paragraph did not occur.

The only evidence defendant offered was his own testimony that he was not responsible for Supove's fee unless Sunderland offered to construct the building for $60,000 and he refused to "go ahead." This is contrary to the plain, unambiguous provisions of exhibit B.

We note that paragraph 3 of defendant's affirmative answer alleged defendant's liability only in the event defendant refused to contract with Sunderland to build a building for $60,000 and

> "* * * in the event said building could not be built for $60,000, then they were not liable to the said plaintiff Roy F. Sunderland for any costs incurred by him for engineering and drafting expenses for the design of said building."

The latter is the event that actually occurred, and the defendant produced no evidence to support this allegation. The decree of the court was also silent in this respect.

Supove and Sunderland both testified that the agreement between the parties during the conference was in accordance with exhibit B; i.e., that the defendant was to pay for the preparation of the plans unless the defendant and Sunderland entered into a contract, in which event Sunderland would absorb the fees into the total price.

The defendant had 21 years' experience in the automobile business. It is a matter of common knowledge that car dealers are involved with the execution of contracts in their transactions with customers. It is difficult to understand defendant's allegations in his answer and his testimony that he understood his obligation to pay the engineering costs occurred only in the event that Sunderland offered to build the build-

ing for $60,000 and he, the defendant, refused to "go ahead."

> "* * * It is axiomatic that one who seeks the reformation of an instrument must establish by clear, satisfactory and convincing evidence that the instrument, as executed, was the result of a mutual mistake * * *." *Weatherford v. Weatherford et al.,* 199 Or 290, 257 P2d 263, 260 P2d 1097.

See also *Cohn v. Duntley,* 147 Or 176, 31 P2d 170; *Brown v. Briggs,* 134 Or 184, 292 P 1034.

Clear and convincing evidence means that the truth of the facts asserted is highly probable. *Cook v. Michael,* 214 Or 513, 527, 330 P2d 1026; *Heise v. Pilot Rock Lbr. Co.,* 222 Or 78, 352 P2d 1072.

Clearly, the defendant failed to sustain the burden of proving fraud or mutual mistake, and the court erred in granting reformation.

The plaintiffs assert that we should determine not only the issue of reformation but the legal issues submitted in their complaint and not remand the case.

At the trial the parties stipulated that all the issues raised by the pleadings could be tried by the court and waived a jury. At the close of the case the trial court rendered an oral decision which not only granted reformation but went further and held that the plaintiffs had failed to prove the legal issues alleged in the complaint. Later the court entered a decree to the same effect.

ORS 16.460 (2) provides in part:

> "* * * When such an equitable matter is interposed, the proceedings at law shall be stayed and the case shall thereafter proceed, until the determination of the issues thus raised, as a suit

in equity by which the proceedings at law may be perpetually enjoined or allowed to proceed in accordance with the final decree; or such equitable relief as is proper may be given to either party. If, after determining the equities, as interposed by answer or reply, the case is allowed to proceed at law, the pleadings containing the equitable matter shall be considered withdrawn from the case, and the court shall allow such pleadings in the law action as are provided for in actions of law."

Had the parties and the court intended to follow the provisions of ORS 16.460 (2) there would have been no occasion for the court to pass on any other issue than that presented by the equitable answer. Having found that the contract sued upon did not express the actual agreement of the parties and therefore must be reformed, the court should have, in ordinary circumstances, entered a decree perpetually enjoining "the proceedings at law." The parties, however, entered into a stipulation,[1] the effect of which was to authorize the court sitting without a jury to try all the issues, legal and equitable, and at the conclusion of the hearing, to render a decision thereon and enter a single decree. That this was the meaning of their stipulation is evidenced by the fact that at the conclusion of the taking of the testimony relative to

[1] "MR. LEVIN: If the Court please, there is an equitable defense in reformation alleged in this case, and I believe it is up to the defendant to proceed with the defense as I understand the matter.

"THE COURT: I wonder—If that be the situation, I am assuming you want the entire matter heard today, the equitable matter as well as the law question.

"MR. LEVIN: Yes, Your Honor.

"THE COURT: Probably your record should show your stipulation that the entire matter may be heard before the Court without a jury.

"MR. LEVIN: That's satisfactory to the plaintiff, Your Honor.

"MR. WEATHERFORD: Defendant will stipulate to that, Your Honor.

"THE COURT: Is there any further stipulation regarding the Court's making findings in advance of the decree or in advance of the judgment?

"MR. WEATHERFORD: We would ask for no special findings in case the Court grants a decree to the defendant and under the equitable defense.

"THE COURT: Is that agreeable?

"MR. LEVIN: Yes, Your Honor."

the equitable defense, the court, after listening to argument upon that issue, did not determine it, but with the express consent of counsel for the plaintiff and the acquiescence of counsel for the defendant, took testimony in support of the allegations of the complaint and when the parties had finally rested, announced an oral decision upon all the issues, which later was followed by the entry of a decree embodying the oral pronouncement. In substance, the decree ordered the written agreement to be reformed and found against the plaintiff for that reason and for the additional reason that the plaintiff was not a party to the contract. No decree enjoining the proceedings at law was ever entered.

The effect of all this, in our opinion, was to submit the entire controversy to the court as a suit in equity. A mere stipulation to try the case to the court without a jury might not be sufficient to indicate such an intention but there was much more than that here. Where counsel agree to depart from the statutory procedure in the manner above outlined, it is to be presumed, unless there is clear indication to the contrary, that what commences as a suit in equity will continue to be so until the end. The fact that the decree entered incorporates a judgment cannot be said to militate against this conclusion.

The case of *Pac. Gen. Contrs. v. Slate Const. Co.*, 196 Or 608, 251 P2d 454, cited in the briefs is quite different because there the defendant, at the conclusion of the testimony relative to the equitable defense and after the court had announced its conclusion that the allegations of the equitable answer had not been sustained, moved the court for an entry of a decree to that effect. The court refused to do so, whereupon the defendant filed an amended answer omitting the

equitable defense, and the case proceeded and testimony was heard relative to the issues made by the complaint and amended answer. Judgment was entered for the plaintiff and in this court we held that there was nothing before the court except a judgment in an action at law and that this court could not consider the error of the circuit court in refusing to enter a decree. The parties in that case adhered to the statute instead of departing from it.

While the plaintiff brings a bill of exceptions to this court, the notice of appeal was from the decree in equity and the entire transcript of the testimony is before us. We shall review the legal issues de novo as in an appeal in a suit in equity.

The preponderance of the evidence clearly shows that plaintiffs and defendant had an oral agreement that the defendant was to pay Supove not in excess of $1,500 for the preparation of the plans except upon the one condition which did not occur. As Sunderland could not construct the building for $60,000, the defendant became liable to pay Supove's fee. The parties stipulated that the reasonable value of Supove's services was $1,474.27, the amount demanded in plaintiffs' complaint.

The cause is reversed and remanded with directions to enter a decree awarding plaintiff Supove a judgment against defendant for $1,474.27.