[No. 41915.    En Banc.    May 25, 1972.]

WILBURN LEE COOK *et al.*, *Petitioners*, v. DONA E. COOK, *Individually and as Executrix, Respondent.*

*Ernest L. Meyer*, for petitioners.

*Francis J. Walker*, for respondent.

NEILL, J.—This is an action to enforce an asserted oral contract to devise. The Court of Appeals affirmed the trial court's dismissal. *Cook v. Cook*, 4 Wn. App. 254, 481 P.2d 941 (1971). We granted review. 79 Wn.2d 1002 (1971).

Plaintiffs are the children of Dewey and Anna Mae Cook. Defendant is the second wife of Dewey Cook and executrix under his will. The first Mrs. Cook, Anna Mae, died intestate November 20, 1949, when plaintiff children were aged 22, 19 and 15. Administration of the estate of Anna Mae Cook was commenced in February, 1952, at which time only the daughter, Lela Mae Cook, was still a minor. During administration of Anna Mae Cook's estate, Wilburn Cook and Jerry Cook, the adult children, executed a "release and assignment" wherein in "consideration of love and affection" they conveyed, released, assigned and quitclaimed to their father, Dewey Cook, "all our right, title and interest as heirs in the above-entitled estate." Subsequently, a decree of distribution was entered distributing the estate assets five-sixths to the surviving husband, Dewey Cook, and one-sixth to the minor daughter, Lela Mae Cook. In November, 1956, Lela Mae Cook quitclaimed the lands here in issue to her father under circumstances we will discuss later.

On March 21, 1953, Dewey Cook married Dona, defendant herein. On April 1, 1954, he executed the only will known to have been made by him. Mr. Cook's will acknowledged the existence of his three children, stated that he had them in mind, and devised his entire estate to his wife, Dona Cook. Mr. Cook died July 4, 1968.

Plaintiffs assert that their conveyance of the land to their father by the release and assignment and the quitclaim deed was pursuant to an oral agreement. The alleged agreement was that in consideration of these conveyances he would, upon his death, leave the lands to the children. There are other assets of Mr. Dewey Cook's estate to which plaintiffs make no claim.[1]

The trial court held the evidence did not meet the burden required to sustain plaintiffs' assertion of the existence of the oral agreement. In approaching the issues on which

---

[1]The inventory and appraisal indicate a gross estate of $119,494.41, of which the lands here in issue are appraised at $57,500. These same lands were appraised in Anna Mae Cook's estate at $9,000.

this appeal must turn, sufficiency of the evidence and burden of proof, some established principles should be kept in mind.

■ Equity will recognize oral agreements to devise. *Alexander v. Lewes,* 104 Wash. 32, 175 P. 572 (1918); *Resor v. Schaefer,* 193 Wash. 91, 74 P.2d 917 (1937). However, cases of this kind are not favored, are regarded with suspicion, and will be enforced only upon the strongest evidence that the promise was founded upon a valuable consideration and deliberately entered into by the decedent. *Alexander v. Lewes, supra; Arnold v. Beckman,* 74 Wn.2d 836, 447 P.2d 184 (1968).

The genesis of the concept that this type of case requires proof beyond the usual civil rule of preponderance of the evidence lies in the very nature of the problem. The right to devolve one's estate is a valuable right and these cases arise after death has silenced the only person who actually knows the decedent's true intent. Thus, courts must look to objective facts—the actions and statements made by the deceased promissor during his lifetime—to determine the existence of an agreement. In assessing the evidence, the trier of the facts must be mindful of the elements of probable self-interest of those still living and seeking the benefits of an asserted agreement; that statements made by the decedent to disinterested parties must be tested in light of the time and circumstances existing at the time; and the countervailing equities of the contesting parties. In short, courts strive to determine whether or not the contract did in fact exist and, within the obvious limitations of proof in these cases, the trier of the facts must be convinced that it is highly probable that there was such an agreement as is asserted by the proponents of the contract.

■ To establish the agreement and to remove it from the operation of the statute of frauds, claimants must prove that (1) decedent agreed to will or leave claimant certain property; (2) the services or other performances contemplated as consideration for the agreement were actually performed; and (3) the services or acts were performed in

reliance upon the contract. *Jennings v. D'Hooghe,* 25 Wn.2d 702, 172 P.2d 189 (1946).

Currently, the burden of proof in these cases is expressed in the terms "conclusive, definite, certain and beyond all legitimate controversy." *Arnold v. Beckman, supra.* Over the years we have used various expressions to communicate the idea that proof of the foregoing elements must be strong, one of the strongest known to the law in civil litigation. *See Arnold v. Beckman, supra* at 840-41.

The burden is intended to be difficult, but not impossible. The requirements to meet it must not render such agreements beyond the pale of proof. Further, we are mindful of the following observation by Judge Wiehl:

> Courts throughout the land are engaging in a flight of abstract legalistic verbosity which promises to end only when they run out of new adjectives. It is truly a flight into a land of fantasy since neither lawyer nor layman has any idea of the fine and shadowy distinctions, if any, between all of the adjectives used to describe or define the burden of persuasion.

Wiehl, *Our Burden of Burdens,* 41 Wash. L. Rev. 109 (1966). That comment reflects a very real problem—that of expressing burdens of proof in ways that are both comprehensible and useful to those who must apply them. We think the expressed burden of proof in the case at bar bears fresh explanation.

Plaintiffs suggest that the phrase "beyond all legitimate controversy" imposes an impossible burden since a legitimate controversy is easily created. This phrase has been used in connection with the stated requirement that claimants in these cases must submit proof of some substantial thing done by the decedent in pursuit of the contract. *E.g., Jennings v. D'Hooghe, supra; Swash v. Sharpstein,* 14 Wash. 426, 44 P. 862 (1896). When the phrase is viewed in that context, plaintiffs' characterization is seen to be somewhat overstated. Admittedly, the plaintiffs' requirement has been troublesome in that it can be read as requiring direct proof of some positive act of contract performance

by the decedent; so we reexamine the stated requirement in light of the policy which it serves.

We believe that the considerations underlying the heavy burden of proof in these cases are sufficiently protected in this respect by a requirement that, among the items of evidence submitted to show the existence of the alleged contract, there be some substantial evidence objectively manifesting that the decedent recognized the agreement as existing during his lifetime. It is for the trier of fact to assess the credibility and weight to be attached to the evidence, to measure that evidence in the light of applicable legal requirements and presumptions, and to determine whether the evidence on the point establishes to a high probability that the alleged contract in fact existed.

Burdens of proof reflect 2-fold requirements: first, as to the evidence that need be submitted, and second, as to the persuasive impact upon the trier of fact which the law requires of that evidence.

First, what evidence is prerequisite to submitting the question to the trier of fact? This is the burden of producing evidence. As a qualitative requirement, the evidence must be "substantial." That is, the evidence must support the conclusion that the alleged fact is so, either directly or by reasonable inference and not merely as a matter of conjecture. As a quantitative matter, there must be substantial evidence as to any legally required elements (*e.g.,* here, the elements of contract, performance by promissee and reliance) and also any legally required specific evidence (*e.g.,* here, the requirement of evidence objectively manifesting decedent's recognition of an existing agreement).

Second, to what degree must the trier of fact be convinced of the truth of the alleged fact? Once it is determined that sufficient evidence has been submitted on which a determination can be made, there remains to be satisfied the legal burden of persuasion. In ordinary civil cases, the trier of fact must be convinced that it is more probable than not that the fact in issue is true. In criminal cases, the

elements of the alleged crime must be proved beyond a reasonable doubt. Between these points, there have historically been difficulties in ascertaining the burden of persuasion to accompany the various burdens of proof, and in expressing these in ways that are understandable and useful to triers of fact. *E.g., see Bland v. Mentor*, 63 Wn.2d 150, 385 P.2d 727 (1963). We think that, from the standpoint of persuasive impact, the various intermediate burdens of proof require that the trier of fact be convinced that the alleged fact is highly probable. *See Supove v. Densmoor*, 225 Ore. 365, 358 P.2d 510 (1961). This is not to suggest that there is only one intermediate burden of proof. Variation is reflected in the diverse legal requirements of producing evidence.

As thus viewed, the burden of proof in these cases requires that the party asserting an oral contract to devise must produce substantial evidence tending to establish the three elements of agreement, performance by claimant and claimant's reliance, as noted in *Jennings v. D'Hooghe, supra*. Further, the evidence of the first element (decedent's agreement) must include the specific factor of evidence which objectively manifests the decedent's recognition of an existing agreement during his lifetime. From this evidence, the trier of fact must be convinced to a high probability that all required elements are truly fact.

Plaintiffs were barred from testifying as to the alleged oral agreement by the terms of the "deadman's statute," RCW 5.60.030. Their proof in support of the alleged oral contract to devise constituted principally the testimony of Anna Mae Cook's brother and two sisters, the brother-in-law of plaintiff Jerry Cook, and an uncle and aunt of Dewey Cook.

The essence of the testimony given on behalf of plaintiffs was that Mr. Cook had told relatives of plaintiffs that on his death the farm would go to the children. Some of these statements were attributed to him while he was a widower and plaintiffs were his only heirs and the natural objects of his bounty. The expressions testified to do not necessarily

support the existence of a contract as they are just as readily explained as an expression of his then intentions, rather than as a recognition of an existing agreement.

The strongest evidence supporting the existence of an agreement to devise is the testimony of plaintiff daughter that she executed the quitclaim deed at the request of her father and the testimony of one of Mr. Cook's sisters that after his remarriage he told her that he had left the ranch to his children. Further, plaintiff Jerry Cook's brother-in-law testified that in 1963 Mr. Cook told him that he had a will leaving the ranch to the boys. Similar testimony was given by Mrs. Anna Cook's sister and Mr. Dewey Cook's uncle and aunt.

Contrary to plaintiffs' assertion are the will and the other writings in evidence, together with other testimony as to the decedent's contradictory expressions. The release and assignment executed by plaintiff sons is in the usual language of a gift rather than of a conveyance given for a contractual consideration. The quitclaim deed is not unequivocal when viewed in light of testimony of the circumstances under which it was executed. A title company official testified that the deed by the daughter was given to clear title for an oil company which sought title insurance to cover its lease on the lands in issue.

Testimony in derogation of the existence of such an oral contract was given by a half-sister, a long-time friend, a hunting and fishing companion and a close business acquaintance of decedent. These witnesses recounted statements by Dewey Cook that he had "settled with the children," "had paid them off" and similar expressions.

It appears from the trial judge's memorandum opinion that he attached minimum weight to plaintiffs' evidence and felt that there was convincing evidence militating against existence of an oral contract to devise. However, we cannot say with certainty whether he would reach the same result under the new standard of proof. This type of case is appropriate for close adherence to the rule that a trial judge, observing and hearing the witnesses, is in a

better position to evaluate the testimony than are we. The trial judge should be given an opportunity to reconsider the evidence in light of the changed burden of proof herein adopted. A new trial is not necessary, reargument by counsel being sufficient.

Remanded for reconsideration by the trial judge.

HAMILTON, C.J., HUNTER and STAFFORD, JJ., concur.

FINLEY, J. (concurring specially)—I am in agreement with the majority to the extent that it seems to abandon the "conclusive, definite, certain and beyond all legitimate controversy" burden of persuasion test of *Jennings v. D'Hooghe,* 25 Wn.2d 702, 172 P.2d 189 (1946), *Bicknell v. Guenther,* 65 Wn.2d 749, 399 P.2d 598 (1965), and *Arnold v. Beckman,* 74 Wn.2d 836, 447 P.2d 184 (1968).

The *D'Hooghe* standard of proof strongly suggests that the judges who make and apply our decisional law have indulged in an assumption that *no honest people question the sanctity and the validity of formally executed wills, and that anyone who does so deserves to lose in the courts.* Indulgence in such a delusive and unreliable assumption, and application of the extreme *D'Hooghe* standard of proof, have, I think, resulted in an almost cavalier disregard of claims and rights of litigants based upon asserted agreements or contracts to convey property or to devise by will. The *D'Hooghe* standard of proof, together with the formidable "dead man's" statute, RCW 5.60.030, has too long served to protect formally executed wills with almost unbreachable legal armor and a very nearly absolute legal defense. This, in my judgment, cannot be justified on grounds of policy, equity, or common sense.

I have some doubts about the "high probability" standards established by the majority as the burden of persuasion to be assumed by a will contestant. The majority states that "the trier of fact must be convinced to a high probability that all required elements are truly fact." Under this revised standard, what will happen if the trial judge is convinced, but only to a moderate probability? Apparently he will be required to decide against the contestants al-

though he is convinced it is more likely than not that an oral contract to devise actually *did* exist. It seems to me such a result will be frustrating, both to trial judges and to basic principles of justice.

In effect, the majority's standard of "high probability" raises the judgmental probability required to find the existence of a contract to devise above the level of 50 per cent which would obtain if a "preponderance of the evidence" standard were applied. In so doing, the "high probability" standard creates a kind of judgmental "vacuum"—an area of assessed probability in which the trier of fact can feel it is more probable than not that an oral contract to devise exists, but still be unable to give effect to that contract. The existence of such a vacuum is inconsistent with the greatest possible number of reasonably accurate trial determinations. It is justified only where a strong and pervasive social policy firmly and convincingly suggests that avoidance of results of a particular kind (such as finding an innocent person guilty of a crime) is more important than maximizing reasonably accurate determinations. Such a policy should exist only where a decision against a particular party carries with it connotations of moral culpability, as in a criminal prosecution or (perhaps) a tort suit for fraud. In my best judgment, such a compulsive social policy is not justified and certainly should not be applied in will contests.

Rather than applying a standard which prevents the trier of fact from giving effect to a contract which it believes to exist, I think a standard should be applied which attempts to ensure that the belief of the trier of fact is based on "substantial and reliable evidence." In other words, the trial judge should find the existence of an oral contract to devise where he is convinced by substantial and reliable evidence that it is more probable than not that the contract *did* exist.

In the instant case, the trial court applied the "beyond all legitimate controversy"—*D'Hooghe* test—in holding against the appellants. As I read it, the majority opinion voids this

severe and extreme burden of persuasion standard and replaces it with a less extreme and considerably more reasonable "high probability" test. In the traditional case-by-case developmental process of attempting to improve and attune the law more nearly to existing mores and recognized social practices and needs, perhaps it can be said that "half a loaf is better than none," relative to improvement in the law and the administration of justice. While, as indicated hereinbefore, I would go further than the majority in ameliorating the harsh and obstructive standards of *D'Hooghe* and *Beckman* and would prefer to remand for a *full* and new trial, nevertheless for the reasons indicated, I do concur in the results reached in the majority opinion.

WRIGHT, J., concurs with FINLEY, J.

HALE, J. (dissenting)—I agree with neither the court nor the concurring opinion. I would affirm. One seeking to prove a contract with a dead man or lay claim to his property should carry a heavy burden of proof as a matter of elemental justice. The court recognizes that oral promises to make a will or devise property are regarded with suspicion and require very strong evidence to support them. *Alexander v. Lewes,* 104 Wash. 32, 175 P. 572 (1918); *Resor v. Schaefer,* 193 Wash. 91, 74 P.2d 917 (1937); *Arnold v. Beckman,* 74 Wn.2d 836, 447 P.2d 184 (1968). And the law, both statutory and decisional for centuries has recognized the basic truth that it is easy to fabricate and manufacture colorable claims against a deceased, and that merely to assert the claim in open court under oath will put the deceased's representative on his proof and with little corroboration may carry the day on a wholly bogus and maufactured claim. To say, as does the court, that the evidence against the dead man must be substantial is simply to reiterate the preponderance-of-evidence rule applicable in civil cases generally and to add to it the standard "high probability" without specifying the elevation to which the probability must be carried and is, I think, no improvement upon the time-tested rule long ago announced by this court, and repeatedly adhered to in a long line of

decisions and never changed by statute. I think it a good rule that one who tries to enforce a promise to make a will or an oral contract against one whose lips are sealed in death, be required at law and in equity to prove the agreement conclusively, definitely, certainly, and beyond all legitimate controversy. *Jennings v. D'Hooghe*, 25 Wn.2d 702, 172 P.2d 189 (1946); *Bicknell v. Guenther*, 65 Wn.2d 749, 399 P.2d 598 (1965); *Arnold v. Beckman, supra; Resor v. Schaefer, supra.*

I would, therefore, affirm the Court of Appeals, 4 Wn. App. 254, 481 P.2d 941 (1971), and the trial court in dismissal of the case.

ROSELLINI, J., concurs with HALE, J.

Petition for rehearing denied July 21, 1972.