[No. 28320. Department One. August 7, 1941.]

MARY DOWNING, *Respondent*, v. THE STATE OF WASHINGTON, *Appellant*.[1]

[1]Reported in 115 P. (2d) 972.

*The Attorney General* and *L. C. Brodbeck, Assistant,* for appellant.

*Edgar P. Reid* and *John F. McCarthy,* for respondent.

MAIN, J.—The complaint in this case alleges that fraud was practiced upon the plaintiff by an agent of the defendant, the state, and, for this reason, seeks to set aside a conveyance of real property. By its answer, the defendant denied any fraudulent representations. The cause was tried to the court without a jury, and resulted in a decree setting aside the conveyance, from which the defendant appealed.

At the time the transaction took place, the respondent was a woman seventy-five years of age, and was the owner of approximately sixty acres of land, seven or eight acres of which had been cleared, about one mile from the city of Kelso, in Cowlitz county, and upon which she had lived alone for the preceding four years and a half since the death of her husband.

Sometime during the month of August or September, 1938, one. P. L. Allen, an agent and representative of the highway department of this state, called upon the respondent at her farm home, and told her that the state was going to appropriate a right of way across her property for the construction of a new highway. At this time, he offered her two hundred dollars for the right of way, and stated that, if she did not take that, she might not get that much as the result of a condemnation proceeding. A few days later, he came back and renewed the offer, and made the same statement as to a condemnation proceeding. Subsequently,

he called again and offered her six hundred dollars for the right of way, and at this time stated that he would pay seventy-five dollars of that sum out of his own pocket. She accepted this offer, signed the deed which the agent prepared, and received a warrant from the state for $599.50, there being a fifty cent revenue tax. On one of these occasions, the agent told the respondent that, inasmuch as she was not using the property, it was not worth much. After the transaction was closed and prior to the trial, the highway agent had died. Subsequently, she brought this action to set aside the conveyance as above stated.

The property lies on a hillside sloping to the west, and there appears to be an accord among the witnesses that it is adaptable for suburban home sites. The right of way, as contemplated, would involve cuts and fills. The fills would vary from three feet to very much more than that, and the cuts, at the deepest point, would reach a depth of twenty-five feet. The proposed right of way would sever the land, and, in order to reach the upper part from the lower where the buildings were placed, it would be necessary to construct approaches.

As to the value of the property taken and the damage to the remainder, the respondent's witnesses were substantially in accord, to the effect that it was worth approximately one thousand dollars an acre, not as a farm, but for building sites. As one witness stated, the value of the property before the cut was made was seven thousand dollars, and after, four thousand dollars. The appellant called two witnesses, one of whom testified as to the value of the property taken, but he did not testify as to the damage to the remainder. These witnesses placed the value of the property at approximately two hundred dollars per acre, and one of them testified that, in his opinion,

eight hundred and fifty dollars would be a fair compensation to be allowed for the land taken and damage to the remainder. One of the respondent's witnesses testified that the construction of the approaches would cost from seven hundred and fifty to eight hundred dollars, and the state did not controvert this estimate.

There is nothing in the deed obligating the state to construct the approaches. If it would cost seven hundred and fifty dollars to construct the approaches and the state should decline to construct them, the respondent, having only received six hundred dollars, would be paying out for the approaches one hundred and fifty dollars more than she received for her land. We think the evidence, when all considered, definitely establishes that the consideration paid for the right of way and for damages to the remainder was grossly inadequate.

The voucher recites:

```
"For land taken 1.67 acres......  $427.00
"  "    all damages of whatsoever
              nature and kind.......   173.00
                                      _____
                                       600.00
   "Less Documentary Tax Stamp.          .50   $599.50"
                                      _____
```

█ Generally speaking, inadequacy of price is not sufficient, standing by itself, to authorize a court of equity to set aside a deed. There are some cases that hold that it may be so grossly inadequate as to shock the conscience of an equity court, and, if that appears, then inadequacy of consideration may be sufficient to avoid a conveyance. If, however, there is inadequacy of consideration, such inadequacy, with other inequitable incidents, may afford proper ground for relief. Whether the inadequacy of the price in this case was sufficient in itself to justify equitable relief will not be

determined, because the case has other inequitable incidents which will be referred to later.

In *Sherman v. Glick*, 71 Ore. 451, 142 Pac. 606, it was said:

"Inadequacy of price paid for real property is not sufficient alone to authorize a court of equity to set aside a deed of conveyance, unless it is so gross as to shock a conscientious person; but, if the inadequacy is so great as to shock a conscientious person, it alone may furnish sufficient ground for annulling the conveyance. When the price paid is inadequate, but not grossly so, such inadequacy, with other inequitable incidents, may afford proper grounds for relief."

In 9 Am. Jur. 371, § 25, it is said:

"Inadequacy of consideration for a contract or conveyance may, however, be sufficiently gross to be clearly indicative of imposition or undue influence, and where coupled with weakness of mind, from whatever cause produced, or with pecuniary distress, or circumstances of fraud, oppression, or undue influence, affords a proper case for relief in equity. In other words, equity has jurisdiction to rescind a contract where an unconscionable advantage has been taken by one of the parties, of the condition or circumstances of the other party, especially where there is gross inadequacy of consideration, or where imposition or oppression has been practiced upon a person reposing confidence in the party who has abused it. The ground on which a court of equity affords relief in such cases is that while there may not have been any actual fraud practiced by either party to such contract, yet there has been a constructive fraud perpetrated upon the party who, from any cause, may not have stood upon an equal footing with the person with whom he has contracted."

The law, as stated in the excerpts just quoted, is substantially the same as is stated in 2 Pomeroy on Equity, § 928, and by other text writers.

Even though no directly false statements are made, if there appears to be a studied effort to produce

a false impression upon the mind of the party from whom land is being purchased, this, together with inadequacy of price, will be sufficient to authorize relief.

In *Stewart v. Wyoming Cattle Ranche Co.*, 128 U. S. 383, 32 L. Ed. 439, 9 S. Ct. 101, which was an action for deceit, it was said:

"The gist of the action is fraudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff."

When the agent approached the respondent to purchase the right of way, as above stated, he told her that, if she did not take the two hundred dollars, she might not get that much in a condemnation proceeding, and he repeated this on the second visit, and, when he came the third time and offered her the six hundred dollars and stated that he would pay the seventy-five dollars out of his own pocket, this latter statement was a direct misrepresentation. The effect of the course of conduct of the agent and of the statements made would tend to produce upon the mind of the respondent a belief that, if she did not accept the six hundred dollars, she would not get that much as a result of a condemnation proceeding.

Further than this, so far as the damage to the remainder by reason of the cuts and fills on the right of way was concerned, the parties did not stand upon an equal footing. The agent, being engaged in purchasing rights of way for the state, undoubtedly was able to form a judgment as to the damage to the remainder. While the respondent may have had some knowledge of the value of the land in its then condition, it may well be doubted whether she had any

thought of its adaptability for home sites, or had any appreciation of what the damage to her property would be by reason of the construction of the highway.

The inadequacy of consideration in this case, which we believe was gross, coupled with the other incidents mentioned, constituted constructive fraud, and entitled the respondent to relief.

The decree appealed from will be affirmed.

MILLARD, BLAKE, SIMPSON, and DRIVER, JJ., concur.

[1]Reported in 115 P. (2d) 967.