[No. 31433. Department One. January 20, 1951.]

EDMOND L. JANSEN *et al., Respondents,* v. RUTH CAMPBELL, *as Executrix, Appellant.*[1]

*P. R. McIntosh* and *W. S. Lewis,* for appellant.

*J. Duane Vance* and *Bassett & Geisness,* for respondents.

SCHWELLENBACH, C. J.—This is an appeal from a decree ordering that, upon the settlement of the estate of Donald Campbell, deceased, defendant Ruth Campbell deliver to plaintiffs Edmond and Carolyn Jansen, all of the properties and assets of the Donald Campbell estate.

Carolyn Jansen, of San Francisco, California, called "Babe," is a sister of Elizabeth Campbell, deceased, who was the wife of Donald Campbell, deceased. Elizabeth died March 6, 1947, and Donald died April 29, 1948. Ruth Campbell married the Campbells' son in 1922. He died in 1925.

The complaint alleged that, at the time of the death of

[1]Reported in 227 P. (2d) 175.

the parents of Elizabeth and Carolyn, the latter paid all of the funeral expenses; that at that time Elizabeth and Donald orally agreed with each other and with Carolyn that if Carolyn would not demand of them any contribution toward the funeral expenses, Elizabeth and Donald would, leave all of their estates and properties to Carolyn and would execute wills to that effect; that, pursuant to said agreement, Carolyn did refrain from demanding any contribution toward said funeral expenses.

The complaint further alleged that, at the time of the death of his wife and continuously thereafter and until his death, Donald was suffering from cancer of the throat which was incurable, which he well knew; that, because of his physical condition, Donald was in need of assistance and care, both as to his physical well being and as to managing his own affairs; that, in order to secure the assistance of plaintiffs in the management of his affairs and the care of himself personally, he agreed to leave unrevoked the will he had theretofore executed; that, pursuant to said agreement, plaintiffs did render assistance in a great number of instances (enumerating them); that, contrary to the terms of said agreements, Donald revoked the aforementioned will and executed a new one leaving all of his property to Ruth. These allegations were denied by defendant.

The testimony showed that the mother of Elizabeth and Carolyn died in 1930 and the father in 1933. The father had not worked for twenty-five years and left no estate. Carolyn had supported them for ten years prior to the father's death and she paid their funeral expenses.

November 14, 1946, Donald and Elizabeth executed their wills, leaving their property to each other. The wills also provided that, in the event either would predecease the other, their property was devised and bequeathed to Carolyn.

March 6, 1947, two days prior to Elizabeth's death, she and Donald deeded certain real property in Seattle to Carolyn.

Prior to Elizabeth's death she and Donald had a joint account in the Canadian Bank of Commerce in Seattle. August 21, 1947, this was changed to a joint account between Donald and Carolyn.

After Elizabeth's death Donald spent considerable time with the Jansens. He would visit them in San Francisco and they would visit him in Seattle. While in Seattle, they usually would go up to Vancouver, B. C., with him to visit some relatives of his. During 1947 and 1948, four checks on the Bank of America of San Francisco, totaling $810.70, were issued by Edmond L. Jansen to the order of Donald Campbell, and endorsed by him. March 13, 1948, Donald issued a check to C. Jansen in the amount of $550. March 12, 1948, Donald was taken to the University of California Hospital. This was about six weeks before his death in Seattle. Three checks were issued by Edmond Jansen on the Bank of America to the regents of the University of California: March 12, 1948, $180; April 5, 1948, $200; April 12, 1948, $9. These were all endorsed by the regents and by the University of California Hospital.

Mrs. Maxine Stephens of Bothell testified that she knew Donald and Elizabeth very well; that they lived next door to her and they and she visited back and forth; that for a time they lived with her. She testified that Elizabeth said: "Babe is taking care of Mother and Father. She will be taken good care of. . . ." "Babe knows she'll be taken care of if anything happens to us." She testified that Elizabeth told her that anything they had, Babe would get; that Donald was present at most of these conversations. She also testified that, after Mrs. Campbell's death, Donald told her she was to pick out what she wanted for a keepsake and to see Babe about it, and they would take care of it for her.

Mrs. Freda Gillis testified that she heard Mrs. Campbell tell about what Babe had done for their parents and that she was going to remember Babe for doing that. She also heard Donald say that he was leaving everything to Babe because she had been so good to him; that he could always go to her; that it was another home.

Donald flew back to Seattle April 15, 1948, and immediately went to the hospital where he remained until his death. While there, and on April 23, 1948, six days prior to his death, he executed a new will leaving all of his property to Ruth.

In 1947 Donald wrote a number of letters to the Jansens. We quote from some of them:

EXHIBIT 5:

"Monday, May 26

"Dear Babe and Edmond I received your letter this morning and was realy surprised at the attiude or the feeling that you got of me I am realy dumfounded the last girl that I thought would turn me down I was thinking of coming down after Decoration Day but I would be scared now after the bauling out you know the reason I drawed that money out of the Bank I did not want to draw out of the savings account *and for the will it is in the safe deposit and my insurance you but to be safe I would pay a year in advance.*" (Italics ours.)

EXHIBIT 6:

[Envelope attached shows mailing date May 27, 1947]

"Dear Babe and Edmond

"I just thought I would drop a line I feel so bad about the way you took that I cant get over it to think that you would think of me that way But Babe if you think of me that way it must be from the Hart I know you treated me to good and for Lizzie passing that remark there must of being some thing behind it Babe if I done anything it was not don intentinal so I have nothing to apolijise for You told me you wrote it to get it of your chest Well I am writing this as plain as I can to get it of my chest My intententions was to go down to see you after the 30TH But Babe the feeling as I can see is to nasty I am very very sorry I raised so much Hell *But Babe what ever come or goes Lizzies wishes never will be changed* I ain't going to give you my adress any mail sent to Naylors you spoke about sugar stamps if you send me some I will pick some wild Black Berrie and make some jam for you. Babe there a lot of funny work going but I am not dum the only thing I can do is to sign the safe deposit box to some person responsible there is nothing but the will and insurance papers in it *Babe for God sake dont think I am forgetting you* I am very sorry but where there

is smoke there is fire so there is something behind it I am not dum

"So Good By from                                    Donald"
(Italics ours.)

EXHIBIT 7:

                                                    "May 30 1947

"Dear Babe and Edmond
"I received your welcom letter Glad you did not mean what you said as I was pretty sore to think that you would go back on me *not that it would make any difference to Lizzies wishes and as for the Bank account I figurd it would keep me from drawing on my savings account* . . . and then Babe you spoke about my insurance you rember I spoke to you about that you said you did see howe you could make the payments as you were working all the time so I wanted to be sure *and as for the will it will stand as it is* and pleas dont worry as I think jus as much as ever of you with all you faults I love you still . . ." (Italics ours.)

EXHIBIT 8:

"Wed June 4 . . .
"But I might as well spend it that way you know I am no Damed fool *they would like me to buy a home But if I did it would be in your name* I am not crazy But it is not for long you know Bab I cant get over what you said I cant help it you know Babe I done nothing that you should jump me for But Babe dont look for me yo know my trouble is on both sides of my tongue now so the Doctor told me he could do nothing and ordered me back to 30th of June so just forget me coming down As for my feet they are pretty sore but that is not the Doctors fault I just get me a bottle to kill the trouble *I will pay the insurance here I figure on paying for a year of corse that was put in your name so there will be lots left for you* . . ." (Italics ours.)

EXHIBIT 10:

                                                    "Monday June 9

"Dear Babe and Edmond . . .
". . . *whenever you want to buy your home you know wher to call if you want to It is only a short time any way you know that it has cost me quite a bit but not so much at that* . . ." (Italics ours.)

In *Blodgett v. Lowe,* 24 Wn. (2d) 931, 167 P. (2d) 997, we quoted from *Henry v. Henry,* 138 Wash. 284, 244 Pac. 686, as follows:

" 'We are prepared to make, and are justified in making, a statement even more stringent than that, and to hold that one seeking to establish an oral contract, whereby property of the deceased is sought to be taken, must establish all the elements of the contract and a right to have it enforced beyond all reasonable *doubt. Without such a rule, no estate* of any considerable size is safe from claims that it has been devised and bequeathed by word of mouth.' "

We then said:

"In order to establish a contract such as here alleged to have been made, it is necessary that the person asserting it show, by evidence that is conclusive, definite, certain, and beyond legitimate controversy (1) that a contract as alleged was entered into between the deceased and the person asserting the contract; (2) that the services contemplated as consideration for such agreement have been actually performed; and (3) that such services were performed in reliance upon the agreement."

In a subsequent case, *Jennings v. D'Hooghe,* 25 Wn. (2d) 702, 172 P. (2d) 189, we held that cases seeking specific performance of contracts to devise are not favored and, when the promise rests in parol, are even regarded with suspicion, and such a contract will not be enforced except upon the strongest evidence that it was founded upon a valuable consideration and deliberately entered into by the deceased; and it cannot be established by the acts of one party alone.

We adhere to the rules stated in the above mentioned cases. Most witnesses in cases of this kind are usually partisan, and, although sincere, they quite often permit their enthusiasm for the litigant for whom they are testifying, to color their testimony. In addition is the fact that the oral contract sought to be established cannot be disputed by the deceased person with whom the contract is alleged to have been made. As a result, the courts look upon such alleged contracts with suspicion and require strict proof thereof. Nevertheless, the courts will consider independent, written corroborative evidence to determine whether or not such a contract has been made.

In the *Jennings* case the court reviewed thirty-seven cases

relative to oral contracts to make wills, in which twelve were held to be enforcible and twenty-five were held to be not enforcible. In most of the twelve cases deeds or wills had been executed in furtherance of the oral contracts.

In the instant case, Donald and Elizabeth each executed wills making Carolyn the beneficiary in the event of the death of either. Prior to Elizabeth's death, she and Donald deeded some property to Carolyn. After her death, Donald made Carolyn a joint tenant in the bank account. She was made the beneficiary of the insurance policy. In his letters, Donald repeatedly stated that the will would stand and, in all of his dealings, acted on the assumption that what he had left would go to Carolyn. The respondents, relying upon his promise and his assurances that it would be carried out, furnished him money from time to time and even paid his hospital expenses in California shortly before he died.

Based on all of the testimony, both oral and written, the trial court concluded, and so do we, that the contracts as alleged were actually entered into; that the services contemplated as consideration for such agreements were actually performed; and that such services were performed in reliance upon the agreements.

The decree appealed from is affirmed.

BEALS, HILL, GRADY, and DONWORTH, JJ., concur.