# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DENNIS BALE and CLARENCE BALE,

           Respondents,

        v.

GARRY L. ALLISON, individually and as personal representative of the ESTATE of ROBERT E. FLETCHER,

           Defendant,

JOHN F. FLETCHER and ROBERT G. FLETCHER,

           Appellants.

NO. 67395-5-I

DIVISION ONE

ORDER GRANTING MOTION
FOR RECONSIDERATION
RE ATTORNEY FEES

Appellants John and Robert Fletcher moved on February 21, 2013, to reconsider the court's February 11, 2013 opinion denying attorney fees on appeal. The court has determined that the motion should be granted. The Fletchers are awarded their reasonable fees solely for responding to the meritless cross appeal. Therefore, it is

ORDERED that appellants' motion for reconsideration is granted and the determination of attorney fees is remanded to the trial court, consistent with this order.

DATED this _12th_ day of March 2013.

FOR THE PANEL:

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DENNIS BALE and CLARENCE BALE, | ) ) | NO. 67395-5-I |
| Respondents, | ) ) | DIVISION ONE |
| v. | ) ) | |
| GARRY L. ALLISON, individually and as personal representative of the ESTATE of ROBERT E. FLETCHER, | ) ) ) ) | |
| Defendant, | ) ) | PUBLISHED OPINION |
| JOHN F. FLETCHER and ROBERT G. FLETCHER, | ) ) ) | FILED: February 11, 2013 |
| Appellants. | ) ) | |

2013 FEB 11 AM 8:52

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

LAU, J. — Robert E. Fletcher used a quitclaim deed to gift his Winthrop cabin to his nephews, John and Robert G. Fletcher.[1] John and Robert appeal the trial court's determination that the failure to recite consideration invalidated the deed. We conclude the deed is valid because it met all statutory requirements and no recital is required to

_____

[1] For clarity, we refer to Robert E. Fletcher as "Bob." We refer to Bob's nephews, John and Robert G. Fletcher, by their first names.

effectively gift real property. Accordingly, we reverse the judgment awarding title to Denny and Allen Bale. On cross appeal, the Bales challenge the trial court's use of the clear, cogent, and convincing standard of proof to find that the Bales failed to establish an oral contract to devise existed between Bob and the Bales. We conclude the trial court applied the correct standard of proof at trial to determine insufficient evidence of an oral contract to devise existed. We remand to the trial court to consider an award of attorney fees and costs to John and Robert but deny fees and costs on appeal.

## FACTS

Neither party assigns error to the trial court's findings of fact and, thus, they are verities on appeal. Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995).

Bob Fletcher owned a parcel of real property including a cabin in Winthrop, Washington. John and Robert Fletcher were Bob's nephews. Starting around 1960, Bob took his nephews to visit the cabin two or three times a year. John and Robert's father (Bob's brother) died in 1964 when the boys were young, so Bob "took [them] under his wing." Report of Proceedings (RP) (June 9, 2011) at 508. Bob lived with John and Robert for two years and married their mother (Bob's brother's widow) in 1968. That marriage lasted only two years. Until 1971, John continued visiting the cabin property two or three times a year.

Bob married Edna Fletcher in 1971. Denny and Allen Bale ("the Bales") are Edna's adult sons from a previous marriage. When Bob and Edna married, the cabin on the Winthrop property was a small, rustic Forest Service cabin that lacked indoor plumbing and running water.

-2-

Bob and Edna were married 28 years. During that time, the Bales made numerous improvements to the Winthrop property, including

building a woodshed; installing exterior lighting; building a storage shed; clearing a parking area near the cabin; clearing and seeding lawn areas near the cabin; cutting down trees and removing tree stumps; planting ornamental bushes, evergreen trees, and fruit trees; rebuilding, grading, and graveling the driveway; and building a horse coral; adding on a bedroom, a bathroom, and a porch to the cabin; installing a complete water system to the cabin property, including a well; adding complete interior plumbing and septic systems to the cabin property; remodeling the living room; extending and enlarging the kitchen space; installing countertops and cabinets to the kitchen; rewiring the entire electrical system; replacing the roof on the old section of the cabin and roofing the new additions to the cabin; insulating all of the original walls and ceiling portions, plus the new additions; replacing all the windows; installing new flooring and related structural supports; re-sheeting the exterior walls; installing a new water heater; making major repairs to the wood burning and cooking stoves; installing a propane fireplace; and replacing the two chimneys.

They also contributed furnishings and appliances to the cabin. They "provided the time and labor, and materials and payments necessary for these extensive renovations, improvements, and maintenance in reliance on their understanding that they would own the Winthrop property after [Bob] died." John and Robert stopped visiting the cabin during Bob and Edna's marriage because Edna did not "appreciate" them.

Edna died in 1999 and Bob again invited John and Robert to visit the cabin. John visited the property a couple times a year. He did maintenance work each time: "I did as much as I had to do to maintain the property while I was there and leave it like it was better than it was when I got there, just like [Bob] always told everyone to do." RP (June 7, 2011) at 385. About a year and a half after Edna died, Bob married Garry Allison.

Bob executed a will in October 2003 in which he made three bequests: (1) to his stepsons, "Dennis Bale and [Allen] Bale, I give my property in Winthrop, WA, share and

share alike"; (2) $2,000 to his adopted daughter; and (3) the rest, residue, and remainder of his estate to Garry Allison. Resp't's Reply Br. at Appendix A. In devising the Winthrop property to the Bales, Bob indicated his desire that they allow Garry Allison, John, and Robert to use the property for their enjoyment "'at the discretion of Dennis Bale and [Allen] Bale.'" Resp't's Reply Br. at Appendix A.

Bob was diagnosed with terminal lung cancer in the fall 2008. John testified that after the diagnosis, Bob invited him and Robert over for lunch. Garry Allison was also present at the lunch. John and Robert both testified that Bob told them at that time, "I want you boys to have the cabin." RP (June 9, 2011) at 559, 587. John found a preprinted quitclaim deed online and filled it out. John and Robert then took Bob to Bank of America to get the deed notarized. Bob signed the deed, and the notary acknowledged his signature. John recorded the deed in Okanogan County on December 19, 2008.

The deed "conveys and quitclaims" the cabin property to John and Robert. The spaces after "in consideration of" and "quit claims to" are blank. Ex. 2. Handwritten at the top of the deed after "Grantee" are the names "Robert Gary Fletcher" and "John Franklin Fletcher" and "Robert Ernest Fletcher" after the word "Grantor." Ex. 2. In the preprinted real estate excise tax affidavit (REETA) and supplemental statement, under the heading "Gifts without consideration," Bob checked the box indicating, "There is no debt on the property; Grantor (seller) has not received any consideration towards equity. No tax is due." Ex. 4. Also handwritten after "Reason for exemption" is "gift, w/no debt." Ex. 4. The REETA also lists Bob as grantor and John and Robert as grantees. The Okanogan County treasurer stamped the REETA "Not Subject to Excise Tax." Ex. 4.

Bob died in April 2009 and Garry Allison was named personal representative under the 2003 will. After Bob's death, John amended the previously recorded quitclaim deed by adding "for love and affection" and also wrote in his name and Robert's name in the "quit claim to" blank.[2] Resp't's Br. at App. C; RP (June 7, 2011) at 390. John also prepared a new REETA to include considerable personal property in and around the cabin. Garry Allison signed the REETA in her capacity as personal representative of Bob's estate. John rerecorded the quitclaim deed on June 26, 2009.

When the Bales learned that Bob quitclaimed the Winthrop property to John and Robert, they filed a "complaint for specific performance, damages and further equitable relief" against John, Robert, and Garry Allison, requesting that the Winthrop property be transferred from John and Robert to them. (Capitalization omitted.) They alleged numerous claims, including breach of oral contract, breach of implied contract, promissory estoppel, undue influence, and tortious interference.

Garry Allison moved for summary judgment on all claims. The court granted summary judgment dismissal on the undue influence, tortious interference, and promissory estoppel claims[3] but denied summary judgment on the oral and implied contract issues. The trial evidence related primarily to the Bales' oral contract to devise claim.

---

[2] When asked why he altered the language, John testified that in February 2009, he had discussed the deed with an attorney friend. The friend advised him to rerecord the deed because the original deed failed to recite consideration. John asked the friend "if it was standard to correct verbiage on a quitclaim and rerecord it, and she said yes, we do it all the time." RP (June 9, 2011) at 564. John decided to rerecord the deed and did so in June 2009, two months after Bob died.

[3] The Bales do not appeal the trial court's dismissal of these claims.

The court entered a judgment awarding clear title to the Bales and entered written findings and conclusions. Regarding the quitclaim deed, the court's conclusions of law state:

> 1. The quit claim deed executed by [Bob] in December 2008 lacks specific and necessary terms to effectively transfer title. The quit claim deed is incomplete and fails to state what consideration, if any, was given for the deed. There were blanks left as to whom the property was conveyed. Because of the fatal defects as to consideration, the quit claim deed is ineffective and did not transfer title to John and Robert G. Fletcher.
> 2. The quit claim deed executed by [Bob] in December 2008 does not meet the fundamental statutory requirements for a "good and sufficient conveyance, release and quitclaim to the grantee[s]" pursuant to RCW 64.04.050, and therefore, is ineffective to transfer the Winthrop property to John and Robert G. Fletcher.
> 3. Because [Bob] is deceased and died testate, the December 2008 quit claim deed cannot be reformed by the personal representative, and the post-death alterations to the December 2008 deed are improper and of no legal effect.

(Third alteration in original.) The court concluded that given the deed's invalidity, Bob's October 2003 will controlled distribution of his estate and the property passed to the Bales.

The court rejected the Bales' oral contract to devise and implied contract claims. The relevant conclusions state:

> 6. [The Bales] were unable to establish [by] clear, cogent and convincing evidence that there was an implied contract between themselves and [Bob] to transfer the Winthrop property in exchange for the work that the Bales performed.
> 7. [The Bales] were unable to establish that Defendant Ms. Garry Allison had knowledge of any contract, oral or implied, or that she took any actions that would have breached either agreement.
> . . . .
> 10. Although [the Bales] established that they performed significant work to improve the Winthrop property, they did not establish by clear, convincing and cogent evidence the existence of an oral contract to devise.
> 11. [The Bales] did not establish that [John or Robert] had knowledge of any oral contract that might have existed between them and [Bob]. Therefore, [the Bales] did not establish that [John or Robert] took action that interfered with any alleged contract.

12. [The Bales] did not establish that [John or Robert] exerted undue influence on [Bob], nor was there sufficient evidence that [Bob] lacked testamentary capacity.

The court ordered John and Robert to transfer all rights and title to the Winthrop property to the Bales under a quitclaim deed.

John and Robert appeal the trial court's conclusion that the quitclaim deed was invalid for failure to recite consideration. The Bales cross appeal the court's conclusion that they failed to establish an oral contract to devise.

## ANALYSIS

### Quitclaim Deed Validity

John and Robert contend the trial court erred in ruling that "fatal defects as to consideration" rendered the quitclaim deed ineffective. They argue that transfer of real property intended as a gift requires no recital of consideration under Washington law.

Construction of deeds is a matter of law. Niemann v. Vaughn Cmty. Church, 154 Wn.2d 365, 374, 113 P.3d 463 (2005). Whether the trial court properly determined the legal consequences of the deed's failure to recite consideration is subject to de novo review. The goal of deed construction is to effectuate the parties' intent. Niemann, 154 Wn.2d at 374. "In other words, 'it is a factual question to determine the intent of the parties' with the court then 'apply[ing] the rules of law to determine the legal consequences of that intent.'" Niemann, 154 Wn.2d at 374-75 (alteration in original) (quoting Veach v. Culp, 92 Wn.2d 570, 573, 599 P.2d 526 (1979)).

Real property conveyances, including gifts, must be accomplished by deed. RCW 64.04.010; Oman v. Yates, 70 Wn.2d 181, 185-86, 422 P.2d 489 (1967) (gifts in general); Holohan v. Melville, 41 Wn.2d 380, 385, 249 P.2d 777 (1952) (gift of real

-7-

property). "Every deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized . . . to take acknowledgment of deeds." RCW 64.04.020. Deeds also require a complete legal description of the property conveyed. Berg v. Ting, 125 Wn.2d 544, 551, 886 P.2d 564 (1995).

Washington courts have affirmed both real property gifts and gifts without consideration. See Kessler v. Kessler, 55 Wn.2d 598, 600, 349 P.2d 224 (1960) ("It was not against public policy, under the facts of this case, for the competent and grateful mother to have executed a deed of gift to her son of her residence property."); Stringfellow v. Stringfellow, 53 Wn.2d 639, 641, 335 P.2d 825 (1959) (father gifted stocks to son by "caus[ing] the issuance of the stock certificate in the son's name" no consideration recited) (italicization omitted); State v. Superior Court of Snohomish County, 165 Wash. 648, 650, 5 P.2d 1037 (1931) (parents could have deeded their home to their daughter "without any consideration at all," but never made that argument). The real estate tax regulation WAC 458-61A-201(1) treats a gift of real property as a nontaxable event. It provides:

> Generally, a gift of real property is not a sale, and is not subject to the real estate excise tax. A gift of real property is a transfer for which there is no consideration given in return for granting an interest in the property. If consideration is given in return for the interest granted, then the transfer is not a gift, but a sale, and it is subject to the real estate excise tax to the extent of the consideration received.

(Emphasis added.)

Bob used a quitclaim deed to gift the Winthrop property to John and Robert without any recital of consideration. RCW 64.04.050 provides a sample quitclaim deed form containing a blank for consideration:

Quitclaim deeds <u>may</u> be in substance in the following form:
> The grantor (here insert the name or names and place of residence), <u>for and in consideration of (here insert consideration)</u> conveys and quitclaims to (here insert grantee's name or names) all interest in the following described real estate (here insert description), situated in the county of . . . . . . , state of Washington. Dated this . . . . day of . . . . . . , 19 . . .
> Every deed in substance in the above form, when otherwise duly executed, shall be deemed and held a good and sufficient conveyance, release and quitclaim to the grantee, his or her heirs and assigns in fee of all the then existing legal and equitable rights of the grantor in the premises therein described, but shall not extend to the after acquired title unless words are added expressing such intention.

(Emphasis added.) In <u>Newport Yacht Basin Ass'n of Condominium Owners v. Supreme Northwest, Inc.</u>, 168 Wn. App. 56, 277 P.3d 18 (2012), we explained that "a quitclaim deed need not precisely match the form described in RCW 64.04.050 in order to convey fee title." <u>Newport Yacht</u>, 168 Wn. App. at 67. We further explained that "the operative words of a quitclaim deed are 'conveys and quitclaims.'" <u>Newport Yacht</u>, 168 Wn. App. at 67 (quoting 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 14.2, at 116 (2d ed. 2004)).

In <u>Newport Yacht</u>, we discussed consideration in the context of quitclaim deeds:

> As our Supreme Court has long recognized, "[g]enerally speaking, inadequacy of price is not sufficient, standing by itself, to authorize a court of equity to set aside a deed." <u>Downing v. State</u>, 9 Wn.2d 685, 688, 115 P.2d 972 (1941). Only where the inadequacy of consideration for conveyance of realty is so great as to shock the conscience may a court invoke its equitable power to set aside the conveyance. <u>Downing</u>, 9 Wn.2d at 688, 115 P.2d 972; <u>see also</u> <u>Binder v. Binder</u>, 50 Wn.2d 142, 150, 309 P.2d 1050 (1957). <u>However, quitclaim deeds are commonly used in transactions that are not the result of a sale for value.</u> 17 STOEBUCK & WEAVER, <u>supra</u>, § 7.2, at 472. <u>Such instruments are "used in donative transactions, in which, despite the recital of consideration in the deed, no actual consideration passes except perhaps love and affection."</u> 17 STOEBUCK & WEAVER, <u>supra</u>, § 7.2, at 472. Similarly, quitclaim deeds are often used "to clear title, to correct errors in prior deeds, and to adjust disputed boundaries between adjoining landowners." 17 STOEBUCK & WEAVER, <u>supra</u>, § 7.2, at 472. In such circumstances, "the common practice in Washington . . . to recite consideration of 'ten dollars and other good and valuable consideration' is

67395-5-I/10

sufficient to support a conveyance by deed." 17 STOEBUCK & WEAVER, supra, §
7.7, at 483.

Newport Yacht, 168 Wn. App. at 82-83 (alteration in original) (emphasis added).

No Washington case addresses whether a quitclaim deed must recite

consideration when the grantor intends to convey real property as a gift. Professors

Stoebuck and Weaver address this question in their authoritative real property treatise:

> The Washington statute that gives the general form of a deed, RCWA
> 64.04.020, does not say that the deed must recite consideration. However, the
> statutes that set out the three statutory forms all say, "for and in consideration of
> (here insert consideration)." Two questions arise: Must consideration in fact be
> given? Must a Washington deed recite consideration?
>     Washington authority on the question is not as clear as might be wished,
> but the Supreme Court of Washington does seem to have adopted the rule that a
> deed is valid without valuable consideration. In other words, land may be
> conveyed by deed as a gift. The gift cases involve gifts between close relatives,
> such as spouses or parent to child, but gifts should be possible between non-
> relatives, though perhaps more subject to being set aside on grounds of fraud or
> some related equitable ground than are gifts to close relatives. Gift deeds have
> been upheld between wife and husband and between parent and child. Dictum
> in two other gift cases that a gift may be supported by "consideration" in the form
> of love and affection or of past consideration is confusing, since a true gift need
> not be supported by any form of consideration. When some consideration is
> given, it need not be in an "adequate" amount; i.e., mere inadequacy of
> consideration is not ground to set aside a deed. Thus, the common practice in
> Washington, as in other states, to recite consideration of "ten dollars and other
> good and valuable consideration" is sufficient to support a conveyance by deed.
> However, the lack of consideration or inadequacy of consideration, along with
> other suspicious circumstances, may give grounds to set a deed aside for fraud
> or upon some related equitable theory. That subject will be discussed later in
> this chapter.
>     A deceptively simple question in Washington is, what is the correct form of
> deed to make a gift? In the gift cases reported in the preceding paragraph, or in
> any Washington appellate decision that can be found, the courts either did not
> quote the language of a gift deed or described a deed that recited nominal
> consideration. The problem is that Washington lawyers habitually use one of the
> three special statutory deed forms, and, as previously noted, those forms all call
> for at least a recital of consideration. A common practice is to use one of the
> statutory forms, usually the quitclaim deed form, so that the grantor will not
> "donate" warranties as well as title, and to recite as consideration the rote
> phrase, "ten dollars and other good and valuable consideration," or the phrase,

-10-

"ten dollars, love and affection, and other good and valuable consideration." Aside from the fact that the deed contains a false recital, this works, but on its face, the deed is subject to a small amount of the excise tax imposed on real estate sales by RCWA Chapter 82.45. To get around that slight embarrassment, some Washington lawyers insert a recital, a sort of "P.S.," in some convenient blank space in the deed, reciting that the deed is one of gift, and no consideration of money value actually passed. Since no excise tax is due on gifts, this moves the county treasurer to stamp the deed "No Tax Due," but it compounds the falsity of the previous recital of consideration. Cautious draftsmen, who tend to be fussy about such details, may wonder if there is a better, truer way to draft a gift deed.

It should be possible to rely upon the general deed statute, RCWA 64.04.020, and to draft a deed that meets the three essentials, in writing, signed by the grantor, and acknowledged, without any recital of consideration, since the statute does not require it. In fact, such deeds are used to grant easements in Washington, and easements, being "interests" in land, are just as much within the deed statutes as are conveyances in fee simple. Of course the deed needs to name the grantor and grantee, describe the land, and contain appropriate words of conveyance. The general deed statute does not give words of conveyance, and the draftsman wants to avoid using the words of any of the three special deed forms; so, the word "conveys" or the phrase "grants and conveys" might be used. Assuming the donor does not want to make warranties, it would be well to add a disclaimer of warranties, to avoid any argument that the grantor intended one of the special statutory forms. The following is a form of deed that should be sufficient to make a gift of a fee simple estate in Washington:

> Grantors, John Doe and Jane Doe, husband and wife, hereby grant and convey as a gift, without warranties, to Richard Roe and Mary Roe, husband and wife, the following described real estate in fee simple absolute: (legal description), situated in the County of _____, State of Washington.
> Dated this _____ day of _____, 20_____.

17 STOEBUCK & WEAVER § 7.7, at 482-84 (footnotes omitted).[4]

The Bales rely exclusively on RCW 64.04.050, quoted above, to argue that the

December 2008 quitclaim deed was ineffective because it was "devoid of any statement

---

[4] We agree with Professors Stoebuck and Weaver's comment that dictum in gift cases that a gift may be supported by consideration in the form of love and affection or of past consideration promotes confusion. See Whalen v. Lanier, 29 Wn.2d 299, 308-11, 186 P.2d 919 (1947) (past consideration; dictum); Lehman v. Columbia Fire Ins. Co., 188 Wash. 640, 643, 63 P.2d 442 (1936) (love and affection; dictum).

of consideration." Resp't's Reply Br. at 9. The Bales do not dispute that Bob intended

to gift the real property to John and Robert.[5] They cite no statute or case authority

requiring a deed to recite consideration when the grantor intends to convey the real

property as a gift. See State v. Logan, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000)

("'Where no authorities are cited in support of a proposition, the court is not required to

search out authorities, but may assume that counsel, after diligent search, has found

---

[5] Even if the deed is ambiguous as to Bob's intent, "deeds are construed to give effect to the intentions of the parties, and particular attention is given to the intent of the grantor when discerning the meaning of the entire document." Zunino v. Rajewski, 140 Wn. App. 215, 222, 165 P.3d 57 (2007). Where a deed's plain language is unambiguous, we will not consider extrinsic evidence. Newport Yacht, 168 Wn. App. at 64. But "where ambiguity exists, extrinsic evidence may be considered in ascertaining the intentions of the parties. In such a situation, we will consider the circumstances of the transaction and the subsequent conduct of the parties in determining their intent and the time the deed was executed." Newport Yacht, 168 Wn. App. at 65 (citation omitted); see also Standring v. Mooney, 14 Wn.2d 220, 227, 127 P.2d 401 (1942) ("'[I]n order to ascertain the intention of the parties, separate deeds or instruments, executed at the same time and in relation to the same subject matter, between the same parties, or in other words, made as parts of substantially one transaction, may be taken together and construed as one instrument'") (quoting 16 Am. Jur. Deeds, § 175, at 537). Here, Bob signed a REETA and supplemental statement, both of which related to the deed and were filed at the time John initially recorded the deed. Both were entered into evidence. The REETA lists Bob as the grantor and John and Robert as the grantees. It also claims a tax exemption under WAC 458-61A-201 for the reason "gift w/no debt." Ex. 4. The supplemental statement describes the transaction as a gift without consideration, stating, "There is no debt on the property. Grantor (seller) has not received any consideration towards equity. No tax is due." Ex. 4. These documents reflect Bob's donative intent. The deed required no recital of consideration.

The Bales contend that in Newport Yacht, we "rejected the use of a [REETA] and testimony as inadmissible extrinsic evidence about the effect of a quit claim deed." Reply Br. Supp. Cross App. at 11. The Bales mischaracterize our holding. In Newport Yacht, we held that the trial court erred in relying on a REETA as extrinsic evidence in that particular case because the deed unambiguously documented the grantors' intent. Newport Yacht, 168 Wn. App. at 71-72. We merely reiterated the well-established rule "that a deed must be ambiguous before extrinsic evidence is properly considered . . . ." Newport Yacht, 168 Wn. App. at 70. Nowhere in Newport Yacht did we hold or imply that REETAs are inadmissible extrinsic evidence where the deed's language is ambiguous.

none.'") (quoting <u>DeHeer v. Seattle Post-Intelligencer</u>, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)). The Bales' reliance on RCW 64.04.050 is questionable because the statute's use of the term "may" is permissive, not mandatory. Nor do they challenge Professors Stoebuck and Weaver's analysis discussed above. For the reasons discussed above, we hold no recital of consideration is required to effectively gift real property. The trial court erred when it concluded the deed's invalidity premised on the recital of consideration omission.

The Bales also claim the deed's invalidity because "the notary failed to enter in her acknowledgment the identity of the person appearing before her." Resp't's Br. at 13. They offer no additional argument on this issue and cite no authority supporting their claim that this omission invalidated the deed, and we can decline to address it. See <u>Palmer v. Jensen</u>, 81 Wn. App. 148, 153, 913 P.2d 413 (1996) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."). Even if we consider this argument, it fails.[6] Review of the disputed deed shows that the grantor's and grantees' names appear on the document. Bob signed and dated the deed. The notary's signature appears directly beneath Bob's signature. The deed contains a blank in the certification: "I certify that I know or have satisfactory evidence that _____, the person(s) who appeared before me . . . ." Ex. 2. Despite this omission, it is clear that the notary acknowledged Bob's signature because he was the

---

[6] Given our decision, we need not address the Bales' argument that John and Robert knew the deed was defective when they attempted to rerecord it after Bob's death. We also need not address whether the attempted alteration cured the allegedly defective deed. Regardless, John and Robert do not argue that the rerecorded deed cured any alleged error. They argue that the original December 2008 deed was valid as written and recorded.

only person who signed the deed. The notary's uncontroverted trial testimony supports this conclusion.[7] See RP (June 9, 2011) at 458-69.

### Cross Appeal

#### Timeliness of Cross Appeal

John and Robert contend the Bales' cross appeal was untimely under RAP 5.2.[8] They argue that the Bales filed their tardy notice of cross appeal 31 days after (1) John and Robert filed their initial notice of appeal and (2) the trial court entered findings and conclusions. The Bales respond that they timely filed their cross appeal within 14 days after John and Robert filed an amended notice of appeal. No RAP rules or case authority address the effect, if any, an amended notice of appeal has on the time to file a cross appeal. But we need not address this question. Even assuming without deciding that the cross appeal was timely, the Bales' argument fails on the merits as discussed below.

---

[7] To the extent the Bales also argue that the failure to enter the grantees' names in the middle part of the deed results in invalidity, the above reasoning applies. Again, the Bales cite no authority for their argument that such an omission invalidates the deed. And as discussed above, the deed elsewhere makes clear that John and Robert are the grantees. We construe the deed to give effect to the grantor's intent. Zunino, 140 Wn. App. at 222.

[8] Under RAP 5.2(a), a party must generally file a notice of appeal within 30 days of the decision for which review is sought. RAP 5.2(f) provides that if a timely notice of appeal or for discretionary review is filed, any other party who wants relief from the decision must file a notice of appeal or for discretionary review within the later of (1) 14 days after service by the trial court clerk of the notice filed by the party initiating review or (2) the time within which notice must be given under RAP 5.2(a), (b), (d), or (e).

Oral Contract to Devise

The Bales contend that the trial court incorrectly applied the "clear, cogent, and convincing" standard of proof in determining that they failed to prove the existence of an oral contract to devise. They argue that a lower standard of proof applies in cases where a will consistent with the alleged contract exists.[9] In the alternative, they argue that they presented sufficient evidence, even under the "clear, cogent, and convincing" standard, to prove such a contract existed.

A party asserting the existence of an express or implied contract bears the burden of proving the essential elements of a contract, including mutual intent. Bogle & Gates, PLLC v. Holly Mountain Res., 108 Wn. App. 557, 560, 32 P.3d 1002 (2001). While equity will recognize oral contracts to devise, they are not favored and will be enforced only upon very strong evidence that the promise was made in exchange for valuable consideration and deliberately entered into by the decedent. Bentzen v. Demmons, 68 Wn. App. 339, 347, 842 P.2d 1015 (1993). To establish the agreement, the claimant must prove that (1) the decedent agreed to will or leave the claimant

---

[9] John and Robert argue that the Bales waived this claim of error because the Bales argued at trial that their evidence met the "clear, cogent, and convincing" standard of proof. But the Bales argued before trial that existence of a will "'is strong confirmatory proof that such an agreement [to devise] was entered into. A case of this kind would not require the same degree of convincing evidence as those cases where no will had been made in conformity with an alleged oral contract.'" Plaintiff's Trial Br. at 6 (quoting Worden v. Worden, 96 Wash. 593, 165 P. 501, 506 (1917)). While the Bales argued throughout the proceedings that their evidence met the highest burden of proof, they drew the court's attention to the cases they now cite for the proposition that a lower standard of proof applies. Regardless, "[i]t is our duty to correctly apply the law and we are not confined by the legal issues and theories that the parties argued." Bainbridge Citizens United v. Dep't of Natural Res., 147 Wn. App. 365, 371, 198 P.3d 1033 (2008). "Additionally, we may sustain a trial court's ruling on any correct ground, even if the trial court did not consider it." Bainbridge Citizens, 147 Wn. App. at 371. We conclude the Bales did not waive this claim of error.

-15-

certain property, (2) the services contemplated as consideration for the agreement were actually performed, and (3) the services were performed in reliance on the agreement. Cook v. Cook, 80 Wn.2d 642, 645-46, 497 P.2d 584 (1972); Bentzen, 68 Wn. App. at 347. The claimant must establish each of these elements to a "'high probability.'" Bentzen, 68 Wn. App. at 347 (quoting Cook, 80 Wn.2d at 647). "Statements of intention alone do not necessarily support the existence of an express contract to devise." Bentzen, 68 Wn. App. at 347.

Washington courts equate the "highly probable" standard of proof to the "clear, cogent, and convincing" standard. See In re Welfare of Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973); Thompson v. Henderson, 22 Wn. App. 373, 376 n.2, 591 P.2d 784 (1979). When findings subjected to this burden of proof are appealed, "the question to be resolved is not merely whether there is 'substantial evidence' to support the trial court's ultimate determination of the factual issue but whether there is 'substantial evidence' to support such findings in light of the 'highly probable' test." Sego, 82 Wn.2d at 739.

Cook originally set forth the "high probability" standard for establishing an oral contract to devise. Before Cook, "the burden of proof in these cases [was] expressed in the terms 'conclusive, definite, certain, and beyond all legitimate controversy.'" Cook, 80 Wn.2d at 645 (quoting Arnold v. Beckman, 74 Wn.2d 836, 841, 447 P.2d 184 (1968)). Cook responded to these varying terms used in cases to express the standard of proof: "We think the expressed burden of proof . . . bears fresh explanation." Cook, 80 Wn.2d at 645. The court then clarified the standard of proof in cases involving oral contracts to devise:

As thus viewed, the burden of proof in these cases requires that the party asserting an oral contract to devise must produce <u>substantial evidence</u> tending to establish the three elements of agreement, performance by claimant and claimant's reliance, as noted in <u>Jennings v. D'Hooghe</u>, [25 Wn.2d 702, 172 P.2d 189 (1946)]. Further, the evidence of the first element (decedent's agreement) must include the specific factor of evidence which objectively manifests the decedent's recognition of an existing agreement during his lifetime. From this evidence, the trier of fact must be <u>convinced to a high probability</u> that all required elements are truly fact.

<u>Cook</u>, 80 Wn.2d at 647 (emphasis added). <u>Cook</u> also discussed the role of the trial court in evaluating the evidence under this standard of proof:

It is for the trier of fact to assess the credibility and weight to be attached to the evidence, to measure that evidence in the light of applicable legal requirements and presumptions, and to determine whether the evidence on the point establishes to a high probability that the alleged contract in fact existed.

<u>Cook</u>, 80 Wn.2d at 646.

In <u>In re Thornton's Estate</u>, 81 Wn.2d 72, 76, 499 P.2d 864 (1972), our Supreme Court reiterated that <u>Cook</u> modified the former standard of proof: "[I]n <u>Cook</u>, we have modified and reduced [the "conclusive, definite, certain, and beyond all legitimate controversy"] standard of proof by requiring only that the trier of fact be convinced to a 'high probability' that the required elements of a contract are present." (Citation omitted.) <u>See also</u> <u>Bentzen</u>, 68 Wn. App. at 347 (citing <u>Cook</u> for the proposition that a plaintiff must establish each element of an alleged oral contract to a high probability).

The Bales cite <u>Worden v. Worden</u>, 96 Wash. 592, 165 P. 501 (1917), <u>Ellis v. Wadleigh</u>, 27 Wn.2d 941, 182 P.2d 49 (1947), and <u>Jansen v. Campbell</u>, 37 Wn.2d 879, 227 P.2d 175 (1951)—all of which pre-date <u>Cook</u>—for the proposition that, because Bob's October 2003 will left the Winthrop property to the Bales consistent with the

-17-

alleged oral contract, "the appropriate standard of proof is less than clear, cogent, and convincing: sometimes stated as 'reasonable certainty.'" Resp't's Br. at 4.

In Worden, the court upheld an oral contract to devise where unrebutted testimony from eight disinterested witnesses established two nephews' agreement to take care of their uncle and his farm in exchange for owning the land when the uncle died. Worden, 96 Wn. at 601-05. The uncle's will documented the agreement but was unenforceable for failure to comply with statutory requirements. Worden, 96 Wn. at 594-95, 609. No evidence contradicted the alleged agreement. Worden, 96 Wn. at 604-05. The court explained:

> The will itself is strong confirmatory proof that such an agreement was entered into. A case of this kind would not require the same degree of convincing evidence as those cases where no will had been made in conformity with an alleged oral contract. Here the will as actually made fully corroborates the other evidence.

Worden, 96 Wn. at 605. The court neither discussed the applicable standard of proof for oral contracts nor mentioned "reasonable certainty."

In Ellis, the court upheld an oral contract to devise based on a will consistent with the alleged oral contract and unequivocal testimony from the deceased's attorney—a disinterested witness—establishing the oral contract. Ellis, 27 Wn.2d at 946-50, 959. The court reaffirmed the pre-Cook "rule that oral contracts to devise and bequeath real and personal property are enforc[ea]ble, if they are established by evidence that is conclusive, definite, and beyond legitimate controversy . . . ." Ellis, 27 Wn.2d at 949. The court cited Worden for the proposition that "'The will itself is strong confirmatory proof that such an agreement was entered into. A case of this kind would not require the same degree of convincing evidence as those cases where no will had been made

-18-

in conformity with an alleged oral contract.'" Ellis, 27 Wn.2d at 948-49 (quoting Worden, 96 Wn. at 605). In response to the appellant's argument that the terms of the contract were not sufficiently definite, the court explained:

> Absolute certainty as to terms is not exacted; reasonable certainty is sufficient. . . .
> "It is undoubtedly true that, in order to warrant a decree of specific performance, the terms of the contract must be so clear, definite, certain, precise, and free from obscurity or self-contradiction, that neither party can reasonably misunderstand them, and that the court can discern the intention of the parties and interpret the contract without supplanting any of its provisions or supplying anything additional. However, absolute certainty is not exacted; reasonable certainty is all that is required. 58 C.J. 930, § 96. If, from all the evidence in the case, the court can ascertain and determine the contract with reasonable certainty, that is sufficient."

Ellis, 27 Wn.2d at 949-50 (quoting Luther v. Nat'l Bank of Commerce, 2 Wn.2d 470, 477-78, 98 P.2d 667 (1940)). The court's "reasonable certainty" statement was specifically directed at the terms of a contract and did not refer to the standard of proof applied in cases involving an alleged oral contract to devise.

In Jansen, the court cited cases establishing the pre-Cook "'conclusive, definite, certain and beyond legitimate controversy'" standard and the rule that "cases seeking specific performance of contracts to devise are not favored and, when the promise rests in parol, are even regarded with suspicion, and such a contract will not be enforced except upon the strongest evidence that it was founded upon a valuable consideration and deliberately entered into by the deceased." Jansen, 37 Wn.2d at 884 (quoting Blodgett v. Lowe, 24 Wn.2d 931, 938, 167 P.2d 997 (1946)). Contrary to the Bales' argument, the Jansen court applied no "reasonable certainty" standard. The court explained:

> We adhere to the rules stated in the above mentioned cases. Most witnesses in cases of this kind are usually partisan, and, although sincere, they quite often permit their enthusiasm for the litigant for whom they are testifying, to color their testimony. In addition is the fact that the oral contract sought to be established cannot be disputed by the deceased person with whom the contract is alleged to have been made. <u>As a result the courts look upon such alleged contracts with suspicion and require strict proof thereof. Nevertheless, the courts will consider independent written corroborative evidence to determine whether or not such a contract has been made</u>.

Jansen, 37 Wn.2d at 884 (emphasis added). The court held an oral contract enforceable "[b]ased on all of the testimony, both oral and written," including the fact that both the decedent sister and brother in law executed wills making the plaintiff a beneficiary. Jansen, 37 Wn.2d at 885.

We question the Bales' reliance on Worden, Ellis, and Jansen in light of Cook's modified standard of proof discussed above. These cases provide no support for the Bales' claim that the standard of proof is less than "clear, cogent, and convincing." Instead, they stand for the unremarkable proposition that the burden of persuasion is reduced for the proponent of an oral contract to devise when a will consistent with the alleged contract exists. We conclude the trial court applied the proper clear, cogent, and convincing standard.

The Bales' remaining contentions fail because, in essence, they attempt to refute the trial court's findings with contrary evidence and testimony that was rejected by the trial court. The Bales contend they presented sufficient evidence, even at the "clear, cogent, and convincing" level, to prove the existence of an oral contract to devise. We do not reweigh or rebalance competing testimony and inferences even if we may have resolved the factual dispute differently. Brown v. Superior Underwriters, 30 Wn. App. 303, 305-06, 632 P.2d 887 (1980). This is especially true when the trial court finds the

-20-

evidence <u>unpersuasive</u>. As Division Three of this court explained in <u>Quinn v. Cherry Lane Auto Plaza, Inc.</u>, 153 Wn. App. 710, 717, 225 P.3d 266 (2009):

> The function of the appellate court is to review the action of the trial courts. Appellate courts do not hear or weigh evidence, find facts, or substitute their opinions for those of the trier-of-fact. Instead, they must defer to the factual findings made by the trier-of-fact. . . .
> It is one thing for an appellate court to review whether sufficient evidence supports a trial court's factual determination. That is, in essence, a legal determination based upon factual findings made by the trial court. <u>In contrast, where a trial court finds that evidence is insufficient to persuade it that something occurred, an appellate court is simply not permitted to reweigh the evidence and come to a contrary finding. It invades the province of the trial court for an appellate court to find compelling that which the trial court found unpersuasive.</u> Yet, that is what appellant wants this court to do. There was conflicting evidence in this case. The trial judge weighed that conflicting evidence and chose which of it to believe. That is the end of the story.

(Emphasis added); <u>see also</u> <u>Thompson</u>, 22 Wn. App. at 376 ("Where, as here, the trial court determines that a plaintiff has failed to meet the high burden of proof [for showing the existence of an oral contract to devise], it becomes doubly hard for an appellate court to rule in the plaintiff's favor.").

The Bales presented evidence that (1) at various times Bob said he was going to leave the Winthrop property to the Bales, (2) Bob occasionally mentioned the work the Bales had done to improve the property, and (3) the Bales assumed they would inherit the property based on the work they did. The Bales claimed a contract with Bob based on their work and their agreement to build a memorial for Edna at the Winthrop property. But there was also contrary evidence presented. No clear contract terms were established. Witnesses testified that anyone who used the cabin worked on it to make it a better place. Evidence also indicated that Bob also worked extensively on the property. John, Robert, and other witnesses testified they knew nothing about a

67395-5-I/22

contract. The will mentions no contract. See Thompson, 22 Wn. App. at 378 ("The

wills' failure to mention a previous contract implies there was no contract."). The deed

may also serve as evidence against a contract.[10] "The trial court heard and saw the

witnesses, and was thus afforded an opportunity, which is not possessed by this court,

to determine the credibility of the witnesses." Garofalo v. Commellini, 169 Wn. 704,

705, 13 P.2d 497 (1932). The court found the evidence insufficient to persuade it that

an oral contract existed between Bob and the Bales. We decline to disturb the trial

court's credibility determinations, and its resolution of the truth from conflicting evidence

will not be disturbed on appeal.[11] See Garofalo, 169 Wn. at 705 (credibility); Du Pont v.

---

[10] If an oral contract existed under which Bob promised to leave the property to the Bales, presumably Bob would not have deeded the property to his nephews.

[11] The Bales' evidence established that (1) they performed a substantial amount of work on the property, including building a memorial for their mother Edna, and (2) they and their friends understood that Bob would leave them the property because of this work. But as this court noted in Thompson, 22 Wn. App. at 378 n.3, "the amount of work done by [the claimant] is immaterial to the question of whether there was an oral contract." Put another way, "The argument that nobody would have worked so hard . . . without a contract with [decedent] to leave him the farm and other property is a pure nonsequitur as proof of the existence of such a contract.'" Thompson, 22 Wn. App. 378 n.3 (alteration in original) (quoting Bicknell v. Guenther, 65 Wn.2d 749, 760, 399 P.2d 598 (1965)). In Thompson, this court rejected statements of testamentary intent similar to those the Bales contend Bob made here:
Several of plaintiff's witnesses testified as to what the father said:
Mervin Anderson: [D]ecedent mentioned the fact many times how involved [plaintiff] was in working on the place and improving it. He mentioned the fact that he knows it will be his any way.
Bill McCowan: [Decedent] stated that [plaintiff] was going to have the farm some day because [plaintiff] was doing all the work.
Lawrence Wilhelm: [Decedent] just outright stated that he was going to leave it to [plaintiff].
Wilma Wilhelm: [Decedent] said that [plaintiff] was always taking care of him and he'd leave it to [plaintiff].
Henry King: [Decedent said] I'm leaving this to [plaintiff] for taking care of me.

-22-

67395-5-I/23

<u>Dep't of Labor & Indus.</u>, 46 Wn. App. 471, 479, 730 P.2d 1345 (1986) (resolving truth from conflicting evidence).

<u>Attorney Fees and Costs</u>

The Bales contend the trial court erred in failing to award fees and costs under RCW 11.96A.150. John and Robert contend the trial court should have awarded them fees under the same statute, which provides in part:

> Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

RCW 11.96A.150(1). We review a trial court's fee decision under this statute for abuse of discretion, meaning we will uphold the court's decision unless it is manifestly unreasonable or based on untenable grounds or reasons. <u>In re Estate of Black</u>, 153 Wn.2d 152, 172, 102 P.3d 796 (2004). Because we reverse the trial court's decision

---

Betty Birchall: [Decedent said] [the farm] belongs to my son . . . He has been doing all this work to improve the property and it belongs to him.

John Karnas: [Decedent] said that [the farm] should go to [plaintiff] because he was the only one that did any work on it.

<u>From these statements, one may speculate whether the decedent recognized some moral obligation to the plaintiff. The statements, however, fail to show he recognized any legal contractual obligation to the plaintiff. Expressions of testamentary intent like these do not prove the making of a contract, nor do they indicate the terms of a contract</u>.

Thompson, 22 Wn. App. at 378-79 n.4 (emphasis added) (alterations in original). This case presents a very similar situation. The Bales failed to prove by clear, cogent, and convincing evidence the existence of an oral contract to devise.

-23-

regarding the deed's validity, we remand to the trial court for reconsideration of the fee award.

Both parties request an award of appellate fees and costs under RCW 11.96A.150 and RAP 18.1. RCW 11.96A.150 "allows a court considering a fee award to consider any relevant factor, including whether a case presents novel or unique issues." In re Guardianship of Lamb, 173 Wn.2d 173, 198, 265 P.3d 876 (2011). Because this case involved a unique issue—whether a quitclaim deed gifting property must recite consideration—we conclude an award of fees to either party is unwarranted. See In re Estate of Burks v. Kidd, 124 Wn. App. 327, 333, 100 P.3d 328 (2004) (declining to award fees under RCW 11.96A.150 because of the unique issues in the case); In re Estate of D'Agosto, 134 Wn. App. 390, 402, 139 P.3d 1125 (2006) (declining to award fees under RCW 11.96A.150 because case involved novel issues of statutory construction).

## CONCLUSION

We reverse the trial court's ruling regarding the deed's validity and affirm the trial court's determination that the Bales failed to prove an oral contract to devise under the clear, cogent, and convincing standard. We remand to the trial court for further proceedings consistent with this opinion and deny attorney fees and costs on appeal.

WE CONCUR:

-24-